(37 App. Div. 425.)

## McCREADY v. LINDENBORN.

(Supreme Court, Appellate Division, First Department. February 10, 1899.)

1. ILLNESS OF COUNSEL—ADJOURNMENT.
    It is not reversible error for the court to consult the convenience of jurors on an application for an adjournment for illness of counsel, where the court assumed the responsibility of deciding the motion.
2. SAME.
    Refusal to adjourn over a day for illness of counsel was not error where such counsel had competent assistance, and his client was not prejudiced thereby.
3. LEASE—CANCELLATION—ALTERATION AGREEMENT—TIME NOT OF THE ESSENCE.
    A lessor agreed to complete certain alterations in a building by October 1, 1894, but the lease provided that, in case such alterations were not fully completed at that time without the lessor's fault, rent should not

begin to run until they were substantially completed. *Held*, that completion by October 1st was not of the essence of the contract, so as to enable the lessee to cancel the lease for failure to complete within the time.

4. REVIEW—JUDGMENT—CONFLICTING EVIDENCE.

A judgment based on conflicting evidence will not be disturbed, where it is not shown to have been the result of prejudice or rendered against the preponderance of the evidence.

Appeal from trial term.

Action by Caroline A. McCready against David Lindenborn. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals.    Affirmed.

For former opinion, see 54 N. Y. Supp. 46.

The action was brought to recover rent, amounting to $480, for a part of the month of October, 1894, for the premises at No. 10 West Twenty-Second street, New York City. The complaint sets up an agreement in writing for a lease, by which it appears that the defendant was to rent the premises mentioned for a term of nine years and seven months, rent payable monthly, in advance, at the rate of $6,400 a year, in addition to certain expenses to be borne by the defendant, including repairs and water rate up to May 1, 1899; an appraisal then to determine the amount of rent thereafter, on condition that the plaintiff should first make certain alterations agreed upon, amounting to $15,000, to change the building from a private dwelling to a place of business; the alterations to be completed October 1, 1894, or, in case the alterations were delayed, then when they should be substantially completed the rent should begin. It was further understood between the parties that alterations, in addition to those contemplated to be made by the plaintiff, might be made at the expense of the defendant. All the alterations were to be made with a view to adapting the building to the defendant's needs. The plaintiff claims that on October 1, 1894, the alterations to be made by her were "substantially completed," and the building was ready for occupancy, the alterations having been made as agreed, and approved by both parties; that the keys were delivered to the defendant, but that he has failed to pay the month's rent from the 4th day of October, from which date he was notified that the rent would begin. The defendant denies that the agreement referred to has been duly carried out; that the alterations which were made by the plaintiff were with his approval, or that the work was completed and the building ready for occupancy on October 1, 1894, or that the keys were given to him; and alleges that the changes made were not in accordance with the plans and specifications as agreed upon, but differently, and were made against his will. The answer further made a counterclaim of $86,999.33 for damages for failure so to complete alterations agreed upon at the time mentioned, but this counterclaim was withdrawn at the trial.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Benno Loewy, for appellant.

W. P. Prentice, for respondent.

O'BRIEN, J.    Upon the issues presented by the pleadings, involving questions of fact rather than of law, there was a protracted trial, extending over many days, which in the voluminous record on this appeal shows that upon every material question there was an irreconcilable conflict of testimony, which finally was resolved by the jury in the plaintiff's favor.

In saying that the principal questions are those of fact, and not of law, we have not overlooked the numberless exceptions taken to rulings upon evidence, or the many requests to charge proposed by the

defendant, some of which were refused and some charged in a modified form. It would not only be impracticable to discuss these exceptions at length, but it is also unnecessary; for although there may be a few instances of rulings to which, technically, an exception would lie, they are not such as would justify our reversing a judgment which was rendered after the material and substantial questions were properly presented to the jury. By way of illustration, much stress is placed upon an exception to the refusal of the court to grant an adjournment on the ground of the sickness of the defendant's attorney. Counsel stated that he was ill, and had been without sleep the night before, and desired an adjournment, with a view to obtaining needed rest. There was present, assisting him upon the trial, another lawyer, who, though not as familiar with the pleadings or the facts, having been brought in for the first time upon the trial, was able to and did assist; and the record shows that both counsel not only represented the defendant with ability, but stubbornly and closely contested every position taken by the plaintiff. The refusal to grant the adjournment was apparently due to the objection of the jurors, whose convenience was consulted by the judge, and who were opposed to the granting of such adjournment. It was not reversible error to consult the jurors, the judge having finally to assume the responsibility of deciding the motion, which he did. The question presented for our determination is, was the ruling wrongful? This, in turn, is to be determined by a consideration whether or not the defendant suffered or was prejudiced. Considering the zeal and ability which, at every stage of the trial, was exhibited by both counsel representing him, it cannot be concluded that he was prejudiced by not having his case fully argued and presented to the jury.

. We come back, therefore, in deciding the merits of this appeal, to a consideration of the questions of fact; and this involves a determination whether the burden placed upon the plaintiff was sustained at the time the motion was made to dismiss the complaint at the end of the plaintiff's testimony, or whether, upon all the proof, including that thereafter submitted by the defendant, the verdict rendered in favor of the plaintiff was against the weight of evidence.

Considering the obligations assumed by the plaintiff under the lease, it was incumbent upon her to prove, before a recovery could be had, a substantial performance of the covenants of the lease, particularly those relating to the alterations of the building, and the time when the building was ready for occupancy. These necessarily require a review of the evidence, and, without attempting to give a detailed presentation, we must content ourselves with noting the leading facts and the manner in which the learned trial judge submitted them to the jury.

After the lease was made, the privilege was given to, and exercised by, the defendant of selecting an architect, and the builder was a man of whom he approved. The plans and specifications were drawn up and accepted by both parties. The architect then discovered that the alterations, as arranged, could not be made within the stipulated $15,000, the builder's estimates being about $20,000; and, after notice and opportunity for the parties to examine the specifications and

plans, a meeting was held in the architect's office, on the afternoon of June 27, 1894, which was attended by all the parties interested, for the purpose of modifying them so that the alterations to be made by the plaintiff should come within the sum of $15,000. At this meeting the parties had the plans and specifications, excepting the specifications for the plumbing work,—although it was testified that there was present a memorandum of the plumbing work,—and went over them in detail, and, as appears from the erasures made in the specifications, each item was examined. According to the plaintiff's version, the plans and specifications were thus modified with the defendant's assent, and the matter left with the architect to obtain estimates and make contracts with the builder. The plaintiff's witnesses testified that among the things left out were the elevator and the extension of the vault under the sidewalk, and that it was understood that if the defendant desired these things he was to pay for them himself. The architect's assistant particularly testified:

"Mr. Lindenborn said to get the work done so far as we thought we had to, and, if there was anything he wanted in addition, he would pay for it. * * * Mr. Lindenborn agreed on the 27th of June that the work should be cut down so as not to exceed $15,000. * * * On the 27th of June it was determined that, to construct the building with elevator, the cost would far exceed $15,000, and it was agreed that an elevator shaft would be built so that an elevator could be added at any future time, and also that Mr. Lindenborn would be satisfied with a hoist."

The defendant, although admitting being present and taking part in the modification and discussion of the proposed changes, insists that he did not give his full assent or any assent to such revised plans and specifications, for the reason that he did not have ample opportunity to examine them for the purpose of determining whether he would or would not approve them. The defendant testified that, at the meeting of June 27th, he particularly objected to omitting the elevator; that he never made any suggestion as to a "hoist"; and that he insisted upon having a vault under the sidewalk. In other words, he directly contradicts the plaintiff's witnesses, not only in regard to the changes proposed, but also with regard to the plans and specifications, which he insists he was to examine further before approval. The defendant also stated that he never intended to put in his own heating apparatus, and denied that he had since June made any requests as to the alterations or approved the work as done.

What took place at the meeting of June 27th is of importance; for from that date followed an acrimonious dispute, not only between the defendant and the plaintiff, represented by her attorney, but also between the defendant and the architect, commencing on the next day after the meeting, when the defendant returned to the office of the architect, and charged him with having treated him unfairly, and, both verbally then, and by letters sent, one on that day and the others on days immediately following, demanded that the plans and specifications be again submitted to him as matter of right, with a view to further examination, to determine whether or not he would approve them as modified. The architect, in answer, offered the drawings overnight, and gave as a reason for not leaving them longer with the defendant that they were needed in order that the work should progress, and the

builder be enabled to complete the alterations by October 1st; and further insisted that, as the defendant had already consented to the modifications, it was useless to submit them for further discussion and dispute. There is testimony to the effect that a copy of uncorrected drawings was later given to the defendant, which he retained and gave to his attorneys, and which upon the trial were used as exhibits. By letter of July 3d, the defendant was notified by the plaintiff's attorney that final estimates had been submitted by the builder, the letter stating that, as these estimates were still in excess of $15,000, it was proposed to substitute for an elevator a safety hoist, and also to dispense with a vault under the street, which would still leave the amount above $15,000, but that the plaintiff would pay the same; and also stated:

"If you desire to make any further suggestions or to omit any other items of expense, so as to retain either of the above specified, please submit your suggestions in writing at noon of Thursday, July 5, 1894, to which hour and place the signing of the contracts has been adjourned."

The attorney testified:

"That letter was written on the 3d of July, at Mr. Ficken's office, * * * at the time appointed for the signing of the contracts. Mr. Lindenborn was to have been there, * * * but on that day he was not there. * * * We proposed to give him notice of the changes. * * * At the interview of June 27th, Mr. Ficken suggested * * * that, if Mr. Lindenborn had anything special he wanted, he could get better rates when the main contracts were signed. We sent him this notice, in order that there might be no mistake about what we were going to do. This was in accordance with what was to have been performed on the 27th of June."

To the letter the defendant replied on July 5th, saying that he had just returned to the city that afternoon, and also stating that he had not given approval of the work that was proposed. The alterations suggested by the letter were contracted for, and the work proceeded with due diligence, but there was some delay in the builder's work by reason of interference by the building department, it being alleged that there was a violation of the laws, and this difficulty was removed by the architect's filing modifications of the work and complying with the department rules. The plaintiff's witnesses further testified that during the summer the defendant made some requests relating to the alterations, particularly with regard to gas outlets, to the end that the work be personally superintended and duly completed; that the safety hoist was not put in, because the defendant never determined what kind of hoist he wanted; that no steam heat was contemplated, as the defendant wanted to heat the building with Backus gas heaters; that during the latter part of August the defendant requested permission to use a part of the building to store some paper that he had bought, which request was granted, and the second or third floor front room was so used by him, the paper being removed, however, prior to October 1st; that in September the defendant said that the building would not be completed in time, and that he would not take it. By letter dated September 30th, the defendant notified the plaintiff that the building was incomplete, and that he refused it, but made no mention of the absence of elevator or vault. It further appeared that the actual expense incurred by the plaintiff for the alterations was $16,-

757.49, and that on October 1st there remained only some outside painting, a railing for the stoop, and similar small work, to be done, all of which was finished shortly thereafter; that the defendant was notified that rent would begin October 4th, instead of October 1st, four days being allowed him to move in; that the keys were given to the defendant's brother, who shortly after returned them to the plaintiff by the defendant's orders; and that the defendant rented another building on Broadway, into which he moved his goods, refusing to pay the rent for which the suit was brought.

The many controversies between the parties are thus narrowed down to the question as to whether the plans and specifications according to which the building was altered were approved by the defendant on June 27th; and, if so, whether the alterations were substantially completed by the 1st of October, 1894. That the original plans included an elevator, a vault under the sidewalk, and some arrangement for heating is not seriously questioned; nor is it disputed that the work did not proceed for the reason that the cost would greatly exceed $15,000, and that, in order to bring the alterations within that sum, it was necessary that some modifications in the plans and specifications should be agreed upon, and that the parties met on June 27th and discussed such a reduction. The whole case mainly turns upon what occurred and what was agreed to on that date. It was essential that the elevator, vault, or some other feature of the building as planned should be omitted to reduce the cost of the alterations to be made by the plaintiff. The plaintiff's contention, supported by her witnesses, is that the modified agreement which was made on that day excluded from the plans the elevator, a heating apparatus, the vault first contemplated, and some minor items. It is not disputed that, with these omitted, the final cost to the plaintiff was $16,757.49. The defendant's position is that he did not approve of modified plans on June 27th; and, further, that any agreement reached at such interview was thereafter arbitrarily altered by the plaintiff's representatives, as shown by the letter of July 3d. In answer to this last suggestion, the plaintiff states that the said letter was not written with a view to making any changes from the June 27th agreement, or obtaining the defendant's approval, but to give him notice that she would proceed with the work, and that, if he desired any substitutions before the builder's contracts were closed, she would accept propositions from him, but otherwise the alterations would proceed as had been determined on June 27th.

There is similar conflicting testimony upon the question whether the building was substantially completed and ready for occupancy on October 1st. It appeared that on October 1st some outside painting remained to be done, that a railing had not been placed on the front stoop, and that other work was unfinished. And it cannot be denied that if the agreement of the plaintiff had been that the building should be actually ready for occupancy, so that the defendant might have the use and enjoyment of the premises, on that precise day, there would be force in the contention that what thus remained to be done was a material part of the work. It must be remembered, however, that the lease provided, not for actual completion of the work on that day, but

that, "in case the completion of the alterations above mentioned shall be delayed without fault, * * * and the said building on the 1st day of October, 1894, be not tenantable and not occupied, then, until such time as the building shall be occupied or the said alterations substantially completed, the rent above mentioned shall not be due, and in such case the rent shall begin when the alterations are completed or the occupation begins." On the trial, this provision was the cause of much discussion, which we do not think it would be of any advantage to extend in this opinion. If we credit the defendant's statement as to what on that date remained to be done, the defendant could not take advantage of such failure to break the agreement; a fair construction of the provision quoted being that it was in the contemplation of the parties that a few additional days might be needed to fully complete, during which the defendant was not liable for rent. Of course, the failure to complete the work within a reasonable time from the date named would have entirely relieved the defendant from the obligations of the lease, but under its provisions some slight leeway was allowed to the plaintiff to fully complete.

Upon all these questions there was direct conflict of testimony; and, while upon some of them the defendant stood alone, the plaintiff in many instances was supported by two or three witnesses, whose credibility, like that of the defendant, was for the determination of the jury. The documentary evidence and letters, although bearing upon the questions involved, only accentuate the conflict produced by the oral testimony. Upon a review of the entire case, therefore, we think, as did the learned trial judge, that the questions in dispute were for the jury to settle; and that their verdict, reached after weighing the evidence and having the benefit of the presence of the witnesses, we would not be justified in disturbing, in the absence of a showing that it was the result of prejudice, or that it was rendered in the face of a clear preponderance the other way.

We think, therefore, that the judgment and order should be affirmed, with costs. All concur.