(118 App. Div. 259)

## PEOPLE v. CURTISS.

(Supreme Court, Appellate Division, First Department. March 22, 1907.)

1. FORGERY—ELEMENTS OF OFFENSE.
   Pen. Code, § 515, provides that a person who, with intent to defraud or conceal any larceny or misappropriation by any person of any money or property, willfully omits to make true entry in any material particular in any account kept by him or under his direction, is guilty of forgery in the third degree. *Held* that, where it appears that defendant made an entry for the purpose of concealing the wrongful taking of money, it is not necessary for the state to show that he himself took it.

2. SAME—EVIDENCE—SUFFICIENCY.
   On a prosecution under the statute, evidence *held* sufficient to warrant a conviction.

3. CRIMINAL LAW—APPEAL—TRIAL COURT'S DISCRETION—DENIAL OF CONTINUANCE.
   On appeal from a conviction of forgery by concealing a larceny by a false entry in an account, it appeared that one of defendant's attorneys was absent when the case was called and that the other claimed to be unprepared; but his affidavit showed they were to try the case together and had been ready for trial several times, except for the inspection of the books of account, and that the date for the trial had been fixed the week before with all the facts before the court, and that the attorney for defendant then presented the same reasons for delay. It did not appear that the attorney who conducted the case was unprepared, and defendant's accountant examined the book while on the stand. *Held*, there was no ground for reversal, or any abuse of discretion, in the denial of a continuance.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Criminal Law, §§ 3045–3049.]

4. SAME—EVIDENCE—FLIGHT.
   A defendant, except under peculiar circumstances, cannot be permitted to show that he did not become a fugitive from justice when accused or suspected of the crime.

Appeal from Court of General Sessions.

George W. Curtiss was convicted of forgery in the third degree, and he appeals from the judgment and from an order denying a motion for a new trial and an arrest of judgment. Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, INGRAHAM, CLARKE, and HOUGHTON, JJ.

Lorlys E. Rogers, for appellant.
E. Crosby Kindleberger, for the People.

McLAUGHLIN, J. The defendant appeals from a judgment convicting him of the crime of forgery in the third degree, and from orders denying motions for a new trial and in arrest of judgment. The indictment under which the conviction was obtained was drawn under section 515 of the Penal Code, which provides, among other things, that a person who, with intent to defraud or conceal any larceny or misappropriation by any person of any money or property, willfully omits to make true entry in any material particular in any account or book of accounts made, written, or kept by him or under his direction, is guilty of forgery in the third degree. The indictment charged that the defendant, as the clerk of the New York Polyclinic Medical School and Hospital, kept for it a certain book, known as the "cash book," in which it was his duty to enter all of the receipts of the corporation; that the corporation at the time stated received a check amounting to $50, made by one Edward L. Kellogg, which it was the duty of the defendant to enter in such book, but notwithstanding that fact, he, with intent to defraud and conceal the larceny and misappropriation of the sum of $50 in money of the corporation, willfully omitted to make a true entry of the receipt of such check.

At the trial, it appeared that the defendant, at and for a long time prior to the time the forgery was alleged to have been committed, was the bookkeeper and cashier of the New York Polyclinic Medical School and Hospital, and as such practically had control over all the funds received by the institution. The general funds were deposited with the Knickerbocker Trust Company in what was known as "Account A." At various times donations for paying certain mortgage bonds of the institution were received, and these the defendant was instructed to deposit in a special account, known as "Account C," and make an entry of the same in a book known as the "Secretary's Memorandum Book." The accountants employed to audit quarterly the books of the institution knew nothing of the existence of account C or the secretary's memorandum book, and had always found the general accounts correct. In June, 1905, while the defendant was away on his vacation, a special accountant was employed to go over the books, and, while he found the balance at the end of every three months was to all appearances invariably correct, he discovered that during the intervals between the audits there were certain irregularities, which excited his suspicion and led to the further discovery that checks had been deposited in account A from time to time without being entered in the cash book, so that, while the books apparently

balanced, there was really a considerable shortage. Further investigation disclosed the fact that account C was several thousand dollars short, and that the defendant, upon receiving checks for such account, had apparently entered them in a private memorandum book, without, however, entering the date of their receipt, and then deposited them in the general account—that is, account A—making no entry thereof in the cash book, and abstracting an equal amount from the cash on hand, so that the books balanced at the end of each quarter, excepting, of course, account C, the existence of which, as above stated, was unknown to the regular auditors.

The evidence established beyond a doubt that the defendant failed to make an entry of the check as charged in the indictment, and the only thing that remains to be considered is whether there was evidence sufficient to justify the verdict that such failure was willful and that defendant's intent in omitting to make such entry was to defraud and conceal a larceny or misappropriation of property. The evidence on the part of the people fairly tended to establish that the defendant had sole charge of the books of the institution; that he not only failed to enter the check specified in the indictment, but at least nine other checks; that a shortage amounting to several thousand dollars existed in his accounts, of which no explanation was given or attempted; that the defendant, in the presence of his wife, after he had been asked to make an explanation of the shortage and had failed to do so, admitted that before going away on his vacation he had taken $175 of the Hospital's money out of the cash drawer, without authority and without the knowledge of any person connected with' the institution, which sum he said he intended to repay on his return. It also appeared that the defendant, some 12 years before, had been convicted of stealing $5,000 from his employers, and although considerable testimony was given to show his reputation for good character since that time, nevertheless it is difficult to see how, if effect is to be given to evidence, the jury could have reached any other conclusion than that the defendant's failure to enter the check in question was willful and with intent to conceal a larceny or misappropriation of the amount of it. It is true there is no evidence to show that this particular omission was to conceal a particular larceny, nor any direct evidence that the defendant had taken the money; but this was unnecessary, for the section of the Penal Code refers only to any larceny or misappropriation by any person, and, while the undisputed facts must irresistibly lead to the conclusion that the defendant himself was guilty of the larceny, it was incumbent upon the prosecution to prove simply that there had been a misappropriation, and that the defendant's failure to enter the check was with the intention of concealing the same. The evidence, as it seems to me, not only justified, but required, the jury to reach the conclusion which it did.

Nor do I think any errors were committed at the trial which would justify a reversal. The refusal to grant an adjournment of the trial certainly, upon the facts set forth, was not error. This was a matter resting in the sound discretion of the trial judge, and such discretion will not be interfered with, unless it appears that injustice was done. McCready v. Lindenborn, 37 App. Div. 425, 56 N. Y. Supp. 54, af-

firmed 165 N. Y. 630, 59 N. E. 1125; Webster v. People, 92 N. Y. 422; People v. Jackson, 111 N. Y. 362, 19 N. E. 54. It does not here appear that injustice was done the defendant. Though one of the attorneys retained by the defendant was absent, and the other claimed to be unprepared, his own affidavit stated that they were to try the case together, and had been ready for trial several times, except for the inspection of the books, which the defendant claimed had been promised him, but never actually permitted. The date for the trial had been fixed by the court the week before, with all the facts before it; the attorney for the defendant at that time having presented the same reasons for delay. Nor is there any indication in the record that the attorney who did actually conduct the case for the defendant was unprepared. On the contrary, the manner in which the case was tried shows a carefully prepared defense. As regards the inspection of the books, though there is conflicting testimony, it is apparent ample opportunity was offered the defendant, and in the light of the evidence it is hardly conceivable that an examination by the accountant selected by him would have altered the situation. Indeed, this accountant examined the cash book while on the witness stand and could find no entry of the check in question.

Nor were the exceptions to the charge well taken. The court stated fully and correctly the force of evidence of good character and the effect to be given to it. The request to charge "that the fact that the defendant remained in the city of New York during the months while this accusation was pending against him may be considered by the jury" was denied, and properly so. A defendant, except under peculiar circumstances, cannot be permitted to show that he did not become a fugitive from justice, when accused or suspected of having committed a crime. Such evidence is a self-serving declaration (Underhill's Crim. Ev. p. 151; Whart. Crim. Ev. § 752; People v. Rathbun, 21 Wend. 509; Gardner v. People, 6 Parker's Crim. Rep. [N. Y.] 155; Com. v. Hersey, 2 Allen [Mass.] 173; People v. Shaw, 111 Cal. 171, 43 Pac. 593), not connected with the res gestæ, and, therefore, inadmissible. There is a clear distinction between evidence of flight, which tends to show the consciousness of guilt, and contrary evidence, which might show a clever attempt to avoid the consequences of the crime by assuming the appearance of innocence. It is true there are expressions in the opinion delivered in People v. Childs, 90 App. Div. 58, 85 N. Y. Supp. 627, to the effect that such evidence is admissible; but what was there said was with reference to the peculiar facts in that case, and the doctrine will not be extended, and, besides, it has no application to the facts in the case now under consideration.

I am satisfied, after a careful consideration of this record, that the defendant had a fair trial, that the evidence sustained the verdict of the jury, and that no error was committed which would justify a reversal.

The judgment of conviction, and the orders appealed from, therefore, are affirmed.

INGRAHAM and CLARKE, JJ., concur. PATTERSON, P. J., and HOUGHTON, J., concur in result.