[Crim. No. 38.   In Bank.—January 30, 1896.]

## THE PEOPLE, RESPONDENT, v. H. M. SHAW, APPEL-
## LANT.

CRIMINAL LAW—PURPOSE OF TRIAL—DUTY OF COURT TO AVOID ERROR.—
The purpose of a criminal trial is to discover and determine whether or
not the defendant is guilty, and not merely to maintain at all hazards a
theory of guilt, entertained beforehand; and it is the duty of the court
to give the defendant a fair trial, according to the established rules of
evidence, and to avoid error in respect of the rights of the accused.

ID.—CROSS-EXAMINATION—BIAS OF WITNESSES FOR PROSECUTION—REFUSAL
TO INFORM DEFENDANT—HARMLESS ERROR.—It is legitimate, upon cross-
examination of a witness for the prosecution, to show that, while he has
informed the prosecution of his knowledge, he has refused to give any
information to the defendant, for the purpose of showing the bias of the
witness; but error in sustaining an objection to a question calling for
such evidence is rendered harmless, where the witness, without further
objection, answers the question fully.

ID.—EVIDENCE APPARENTLY IRRELEVANT—PURPOSE NOT SPECIFIED.—Where
isolated questions are asked by counsel for the defendant, which are
apparently irrelevant, immaterial, and aimless, and no purpose of the
evidence is disclosed, it is not error to exclude the questions, although
a relevant purpose might have been stated.

ID.— HOMICIDE—CROSS-EXAMINATION OF DEFENDANT'S WIFE—DISPOSITION
OF PISTOL—HARMLESS RULING.—Upon the trial of a defendant accused
of murder, where it was admitted that defendant killed the deceased with
a pistol, a ruling sustaining a question asked of his wife on cross-exami-
nation as to what she had done with the pistol with which her husband
had killed the deceased, and her answer that she turned it over to one
of her husband's attorneys, could do the defendant no injury.

ID.—ADJOURNMENT OF TRIAL—DISCRETION OF COURT,—The court may re-
fuse to adjourn a trial from the middle of an afternoon until the next day,
at the request of defendant's counsel, where the circumstances show no
abuse of discretion.

ID.—EVIDENCE—WILLINGNESS OF DEFENDANT TO SURRENDER HIMSELF—
ADVICE TO CONTRARY—HARMLESS RULING.—Where there is no evidence
or pretense that defendant attempted flight, he cannot be prejudiced by
the exclusion of testimony that he went to a town for the purpose of
surrendering himself immediately after the shooting; and that, acting
on the advice of another person not to surrender himself there, he re-
turned home, and waited for the officers to come after him.

ID.—CONDUCT OF DISTRICT ATTORNEY—EVIDENCE—DRINKING OF BEER BY
DEFENDANT—VISITS OF ATTORNEY.—The action of the district attorney
in offering to prove that the defendant was drinking beer on the day of
the homicide, which offer was excluded as not proper cross-examination,
and in asking the defendant how many times his attorneys had visited
him, is not of sufficient importance to be seriously considered as a ground
of reversal.

ID.—RECALL OF WITNESS TO LAY FOUNDATION FOR IMPEACHMENT — CONTRADICTORY STATEMENTS — DISCRETION — HARMLESS RULING. — It is within the discretion of the court to allow the defendant to recall a witness for the prosecution for the purpose of laying a foundation for impeachment by proof of contradictory statements; and it is not an abuse of discretion to refuse to allow it, where no substantial right of the defendant was affected by such refusal at the time when the request was made; and where it appears that the witness was afterward recalled by the prosecution, and defendant did not then offer to question him about the contradictory statements, the refusal is not sufficient ground for reversal of the judgment.

APPEAL from a judgment of the Superior Court of Monterey County, and from an order granting a new trial. N. A. DORN, Judge.

The district attorney, on cross-examination of the defendant, asked him: "Where had you been that day, before you met Mason and killed him?" To this question the defendant objected that it was not cross-examination. The district attorney then said, in the presence and hearing of the jury: "I propose to show that he was drinking beer all morning," to which remark the defendant took exception. The court held that the proof purposed was not proper cross-examination. The district attorney also asked the defendant how many times his attorneys had visited him, which was objected to as not cross-examination and immaterial. The objections were overruled. Further facts are stated in the opinion of the court.

*S. F. Geil,* and *John J. Wyatt,* for Appellant.

It was error to refuse to allow proof that Mrs. Steele had refused to give information to the defendant, as it showed her bias. A witness may be cross-examined as to any fact tending to show bias. (*Jackson* v. *Feather River Water Co.,* 14 Cal. 24; *Harper* v. *Lamping,* 33 Cal. 647; *People* v. *Benson,* 52 Cal. 380; *Anderson* v. *Black,* 70 Cal. 229; *People* v. *Wasson,* 65 Cal. 540; *People* v. *Lee Ah Chuck,* 66 Cal. 666; *People* v. *Blackwell,* 27 Cal. 67; 1 Greenleaf on Evidence, sec. 450; Wharton's Criminal Evidence, secs. 477, 485.) Objectionable

conduct on the part of counsel for the people is ground for a new trial.    Even the asking of improper questions which are not answered has been held sufficient ground for reversing a judgment of conviction.    (*People* v. *Wells,* 100 Cal. 460; *People* v. *Bowers,* 79 Cal. 415; *People* v. *Lee Chuck,* 78 Cal. 327; *People* v. *Ah Len,* 92 Cal. 282; 27 Am. St. Rep. 103; *Long* v. *State,* 56 Ind. 182; 26 Am. Rep. 19.)

*W. F. Fitzgerald, Attorney General,* and *Charles H. Jackson, Deputy Attorney General,* for Respondent.

None of the rulings objected to were prejudicial, and many of them were discretionary.    Special acts cannot be shown by way of impeachment.    (Code Civ. Proc., secs. 2051, 2052; *Sharon* v. *Sharon,* 79 Cal. 673; *Hinkle* v. *San Francisco etc. R. R. Co.,* 55 Cal. 627; *People* v. *Hamblin,* 68 Cal. 101; *Commonwealth* v. *Shaw,* 4 Cush. 593; 50 Am. Dec. 813.)    It is only in extreme cases of misconduct on the part of the prosecution, resulting in prejudice to the defendant, that a reversal will be granted.    (*People* v. *Ward,* 105 Cal. 335; *People* v. *Lee Ah Yute,* 60 Cal. 95; *People* v. *Barnhart,* 59 Cal. 402; *People* v. *Ah Fook,* 64 Cal. 383; *People* v. *Wheeler,* 65 Cal. 77; *People* v. *Hamberg,* 84 Cal. 473; *People* v. *Ross,* 85 Cal. 384.)    Any errors not affecting a substantial right of the defendant must be disregarded.    (Pen. Code, secs. 1258, 1464.)

McFARLAND, J.—The defendant was charged with the murder of one Eugene Mason, and was convicted of murder in the second degree.    He appeals from the judgment and from an order denying a motion for a new trial.

It is not seriously urged that the evidence introduced is insufficient to justify the verdict, or that the court committed any material error in the matter of instructing the jury; but it is contended that there should be a reversal on account of certain errors claimed to have been committed by the court during the progress of the

trial in ruling upon the admissibility of evidence. These alleged errors could and should have been avoided; but criminal cases are too often conducted upon the preconceived theory that defendant is guilty, and that if he be given a fair trial, according to the established rules of evidence, the jury may not convict him. Hence embarrassing questions are frequently presented on appeal unnecessarily caused by want of ordinary care and due consideration of the rights of the accused on the part of those who conduct the trial in the court below. The purpose of a criminal trial is to discover and determine whether or not a defendant is guilty; not merely to maintain, at all hazards, a theory of guilt entertained beforehand by any one man or any community of men.

An examination of the points made in the brief of appellant show that one or two of the rulings of the court complained of were clearly erroneous, and that others, whether strictly erroneous or not, are not to be commended; but we think that it sufficiently appears that said rulings did not prejudice the appellant, or injuriously affect his substantial rights. We will notice them in detail.

1. Mrs. Mary Steele was a witness for the prosecution, and testified that an hour or two after the commission of the homicide the appellant came to her house and made some incriminating statements to her about the homicide. On cross-examination she testified that Mr. Wyatt, one of appellant's attorneys, had called upon her and asked her what she knew about the case; and counsel for appellant asked her if she had "refused to give him any information?" An objection by the prosecution to this question was sustained. This ruling was clearly erroneous. As tending to prove bias and feeling of the witness against appellant, it was entirely legitimate to show upon her cross-examination that, while she had evidently informed the prosecution of her knowledge, she refused to give any information to the appellant. But, notwithstanding the erroneous ruling

the witness immediately went on, without further objection, and said; "I did not give him any information, and did not tell him why I would not give him any; I told him positively I would not tell him anything." This was an answer to the question asked by appellant's counsel; and it is apparent, therefore, that appellant was not prejudiced by the former ruling.    (It seems that this witness had been "ordered" not to speak of the case to the appellant's attorneys, under the mistaken notion which some prosecuting officers have that they can *order* persons whom they want as witnesses not to speak to other persons about what they know.)

2. The same witness (Mrs. Steele) had testified in chief that the statements made to her by appellant were made while he was eating supper at her house; and she was asked on cross-examination: "Did Shaw ever take a meal at your house before?"    Objection was made to the question and it was sustained.   It would, no doubt, have been proper and fair to have allowed an answer to this question.   It was a small matter, and we can hardly see why the prosecution should have objected to it. But we cannot say that the ruling was absolutely erroneous.    Appellant's counsel here, now, argue correctly that it was admissible for him to show that the witness and the appellant were not intimate acquaintances, because it would be improbable that he made to a comparative stranger the incriminating statements testified to by the witness.   But the question ruled out was an isolated question; its purpose was not disclosed; there was no intimation that it was asked to show want of intimacy; and upon its face it was apparently irrelevant and immaterial, and asked without any legitimate aim in view.    Therefore we do not think the exclusion of the question was under the circumstances erroneous. And the same may be said of another question asked this witness which was ruled out, namely: "Did you on that occasion request him [appellant] to perform 'some service for you'?" the occasion being the morning after the homicide when the witness had seen the appellant.

3. Appellant's wife was a witness for him, and on cross-examination she was asked: "What have you done with the pistol with which your husband killed Mason?" To the question appellant objected, and his objection was overruled. She answered: "I turned it over to Mr. Wyatt, one of the attorneys." Conceding that this question was not proper cross-examination, or was inadmissible on other grounds, it is apparent that the question and answer could have done appellant no injury. It was admitted that appellant did kill deceased with a pistol.

4. The refusal of the court to adjourn the trial of the cause from the middle of the afternoon until the next day was not, under the circumstances, an abuse of discretion.

5. When appellant was testifying on his own behalf he stated that on the evening of the homicide he went to Paso Robles, and his counsel asked him: "For what purpose did you go to Paso Robles?" The district attorney objected to the question; and appellant's counsel stated to the court that he desired to show that appellant, immediately after the shooting, went to Paso Robles for the purpose of surrendering himself to the officers, but that acting on the advice of a Mr. Korn he returned home and waited for the officers to come after him. The court sustained the objection. This question might well have been allowed; and in many cases the refusal to allow such a question would be material error. But in the case at bar there was no evidence, or pretense, that appellant attempted flight, and, therefore, he could not have been prejudiced by the rejection of the testimony. The same may be said of the rejection by the court of the offered testimony of said Korn to the effect that he advised appellant not to surrender himself at Paso Robles.

6. We do not think that the alleged misconduct of the district attorney, in saying what he did about appellant's drinking beer, was of importance enough to be seriously considered as a ground of reversal. Neither

is there any importance to be attached to the fact that the district attorney was allowed to ask appellant how many times his attorneys visited him.

7. The most serious question in the case arises out of the refusal of the court to allow appellant to recall the people's witness, Christopher, for the purpose of laying a foundation for showing that he had made a certain statement contradictory of a part of his testimony. The shooting which resulted in the death of the deceased took place about eighty or one hundred yards from the house of said Christopher, who testified to the circumstances of the shooting and said that he stood in his yard and had an unobstructed view of both of the men. Appellant called a witness named Eubanks, who testified that he knew Christopher, and had a conversation with him regarding the shooting; and he was then asked: "Did he [Christopher] inform you where he stood when the shooting took place?" To this the district attorney objected on the ground that " no predicate had been laid for the impeachment of Mr. Christopher," and the objection was sustained. Counsel for appellant then said: "If the court so rules I desire to have the privilege of recalling Mr. Christopher to lay the foundation. Our attention was just called to this information. We intend to show by this witness that Mr. Millard Christopher told him that he stood right in the barn at the time the shooting took place. It has taken us by surprise; we have just ascertained this information, and we ask the court to be allowed to recall Mr. Christopher for the purpose of laying the predicate." The court denied this request and appellant excepted. The request was certainly not an unreasonable one; and we apprehend that most courts would have allowed it. But it was a matter of discretion of the trial court, and the question here is whether there was such a gross abuse of discretion as to warrant a reversal; and that depends, in great measure, upon the character and importance of the testimony of Christopher. If the fact that appellant shot the deceased and thereby caused his death had been

an issue, and Christopher had been the main witness testifying to the shooting, then the judgment would have to be reversed for the said action of the court now under review. But the fact of the shooting was admitted and testified to by the appellant, who claimed that he shot the deceased, Mason, under reasonable apprehension of danger to his own life; and the circumstances of the shooting were testified to in detail by the witness Richardson, who was traveling with appellant at the time, was much nearer the scene of action than Christopher, and had much better opportunity than the latter for closely observing what occurred, and, although called by the prosecution, was evidently not unfriendly to the appellant. And upon examination of the testimony of Christopher we do not perceive that it was in any important sense inconsistent with the testimony of Richardson. It is apparent, therefore, we think, that no substantial right of appellant was affected by the refusal to allow Christopher to be recalled at the time appellant made said request. It does not appear that he was in attendance on the court at that time. Moreover Christopher was afterward recalled as a witness by the prosecution; and when he was on the witness stand the appellant did not then offer to ask him about his statement to Eubanks. Under these circumstances, while we do not at all approve the court's refusal to allow Christopher to be recalled at appellant's said request, we cannot say that such refusal is sufficient ground for a reversal of the judgment.

The judgment and order appealed from are affirmed.

Harrison, J., Garoutte, J., and Van Fleet, J., concurred.

Temple, J., dissented.

Henshaw, J., dissenting.—I dissent, being unable to agree with the conclusion reached in the matter discussed under paragraph 7.

I think the refusal of the court to allow defendant to

recall the witness, Christopher, for the purpose of laying the foundation for his impeachment, was an abuse of discretion which denied the appellant his right to a fair and impartial trial. Christopher's evidence, much more strongly than did Richardson's, indicated that the killing was willful, deliberate, and premeditated. If that evidence was false, if it could be established to the satisfaction of the jury that Christopher did not witness the occurrences he described, or if his testimony could be legally discredited by showing that he made contradictory statements regarding the facts, a man on trial for his life should not have been denied the important right of proving it. If it does not appear affirmatively that Christopher was present at the time permission was asked, still the presumption is that he was within call, since the subpœna commands his presence during the trial of the cause, and it does not appear that he had been excused. To the contrary, it does appear that he was afterward recalled by the prosecution. It is true that defendant did not then attempt to ask the impeaching questions, but the reasons are obvious. He had once asked the privilege, which under the circumstances amounted to a right, of examining the witness upon these matters, and had been denied. He was not to expect that a different result would follow another application. He could not with propriety have asked the questions as tending to impeach the witness upon the evidence he had last given, as that evidence did not bear upon the occurrences of the killing to which Christopher had declared he was an eye-witness, and upon which alone it was sought to impeach him.

BEATTY, C. J., concurred.