[Crim. No. 274.  First Appellate District.—February 15, 1911.]

## THE PEOPLE, Respondent, v. GEORGE W. BROWN, Appellant.

CRIMINAL LAW — MURDER — CONVICTION OF MANSLAUGHTER — SELF-DEFENSE—QUESTION FOR JURY—CONFLICTING EVIDENCE—SUPPORT OF VERDICT.—Where a defendant charged with murder and convicted of manslaughter claims self-defense, and that the verdict is against the evidence—the killing being admitted, and the conduct of the defendant being free from fault prior to the shooting—it was a question for the jury to determine, from all the circum-

stances, whether the conduct of deceased preceding and at the time of the killing was sufficient to justify defendant in an honest belief, as a reasonable man, that he was in danger of his life or of immediate bodily harm from the hands of deceased; and where the evidence is substantially conflicting on that question, and the jury might infer from sufficient evidence that the killing was not justified, but was the result of passion suddenly inflamed from vile epithets hurled by deceased at defendant, the verdict is sufficiently supported.

ID.—JUSTIFICATION UNDER PLEA OF SELF-DEFENSE.—The acts which a defendant may do and justify under a plea of self-defense depend primarily upon his own conduct, and secondarily upon the conduct of the deceased.

ID.—IMMATERIAL EVIDENCE—INJURY TO DEFENDANT FROM ACCIDENT TO HEAD.—Where the only plea was self-defense, and no defense of insanity was interposed, evidence that the defendant had at one time suffered from an injury to his head as the result of an accident was *prima facie* immaterial to the defense interposed, and where no specific purpose of such evidence was stated, the court did not err in excluding the evidence.

ID.—RULING UPON QUESTION NOT ANSWERED.—This court is not called upon to consider or discuss a ruling upon a question not answered by a witness.

ID.—NARRATIVE OF PAST EVENT—ABSENCE OF DEFENDANT.—A question calling for testimony which could only have been the narrative of a past event as to certain conduct of deceased not in the presence of the defendant, and which could not be part of the *res gestae* of the offense charged, was properly excluded.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial. Geo. E. Church, Judge.

The facts are stated in the opinion of the court.

Ernest Klette, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, for Respondent.

LENNON, P. J.—The defendant appeals from the judgment of conviction and an order denying his motion for a new trial.

He was informed against by the district attorney of Fresno county for the crime of murder and found guilty of man-

slaughter. In support of his plea of not guilty the defendant attempted to prove that the homicide was committed by him in self-defense.

The defendant, on the twenty-fifth day of February, 1910, was employed as a porter in the Palace saloon at Coalinga, Fresno county. The defendant's statement of the incidents leading up to the shooting was, substantially, that at about 11 o'clock on the morning of the day just mentioned the deceased, William Miller, very drunk and quarrelsome, entered the saloon where defendant was employed, and, without any real or apparent provocation, commenced in vulgar and vile language to abuse and ridicule the defendant. This conduct continued almost without interruption, and with scarcely a word of protest from the defendant, until the noon hour, when the defendant went to his lunch. He returned to his work behind the bar about 3 o'clock in the afternoon of the same day. Miller also returned to the saloon about this time and renewed his abuse and vilification of the defendant, adding to it a challenge to fight. Miller left the bar-room for a few moments and went upstairs to a lodging-house, where he became engaged in an altercation with the landlady. At the suggestion of Al Johnson, a bartender in the place, who had come on duty while Miller was upstairs, the defendant followed Miller, and requested him to cease his disturbance and go back to the bar-room. Miller, in reply and without any other provocation, gave the defendant a vicious kick in the stomach, and then, in an effort to get away from the defendant, stumbled and fell down the stairs into the bar-room. When Miller got on his feet he turned about—so defendant claimed—shook his fist at the defendant and said, "I'll fix you." No other witnesses in the case saw this movement or heard the remark quoted. The defendant, without any attempt to retaliate, returned to the bar-room and quietly resumed his duties. All of the witnesses for the people are agreed that from this time on until the shooting occurred Miller, with but slight interruption, freely and in filthy language abused and reviled the defendant without any apparent cause or provocation, and at one time attempted to reach or strike the defendant across the bar, but was intercepted by Johnson, the bartender.

The defendant during all of this time was apparently calm and collected, and never once made reply to the abuse that was being heaped upon him. Finally, Johnson urged Miller to cease, and requested him to leave the place. Miller, after inviting the defendant to come outside and fight, said to Johnson that he would go, and started for the street door between two friends and companions, one of whom had him by the arm. Miller was now so drunk that he staggered in his walk. At this time the defendant was at one end of the bar engaged in cracking ice. To reach the street door it was apparently necessary for Miller to go at an angle in the direction of the place where the defendant was working. As Miller was advancing toward the door on his way out with a friend on either side, he half turned and called the defendant a vile and filthy name. Thereupon the defendant came forward from his place at the end of the bar, stepped around behind Johnson, and fired two shots from a revolver at Miller, the second of which proved fatal. While Miller was on his way just before the shooting, and about the time the defendant left his place at the end of the bar, someone said, "Look out for him, Al. He's got a gun." This remark apparently was made by one of the companions of Miller, who was not produced at the trial; but no witness who heard it knew for certain that it was Miller or the defendant that was referred to as having a gun. Miller's body was searched immediately after the shooting, but no weapon of any kind was found upon him. When the witnesses of the shooting closed in upon the defendant he exclaimed, "I'm not going to run away—they may hang me but I am a ruined man. He kicked me in the stomach."

"I'll get you" was the only remark claimed by the defendant to have been made by Miller at any time which could have been construed as a threat against the defendant, and this, according to the defendant's statement, was said some twenty minutes before the shooting. The defendant claimed that Miller, just before and at the time of the shooting, had one hand in his pocket and was apparently struggling to draw a weapon. None of the several witnesses for the people who were present prior to and at the time of the shooting saw Miller then or at any other time make even the semblance of an attempt to draw a weapon; and they were certain that

no threat to kill or to do the defendant bodily harm was made by Miller when, staggering drunk, he was being escorted from the saloon by his two friends. The defendant, at the time of the shooting, was fifty-three years old, and Miller was a young man perhaps eighteen or twenty years of age. Miller and the defendant were entire strangers until the morning in question. The defendant claimed that he shot to kill, believing at the time that his life was in danger. He insisted that this belief was fully justified by the events of the day, and particularly by the remark, "Look out for him, Al. He's got a gun." His attention, he claimed, was attracted from his work by this remark. He understood it as referring to Miller; and upon looking up and aside he saw Miller advancing upon him with one hand in a pocket apparently about to draw a weapon.

It is now claimed that the defendant was justified by all of the circumstances surrounding the killing in honestly believing that an attack was about to be made on his life, or that he was in imminent danger of great bodily harm; and that therefore the verdict of the jury, finding him guilty of manslaughter, was contrary to the evidence.

It is difficult for us to take counsel seriously in this contention; and if it were not for the earnestness with which he presents the point, we would not give it more than passing notice. "The acts which a defendant may do and justify under a plea of self-defense depend, primarily, upon his own conduct, and, secondarily, upon the conduct of the deceased." (*People* v. *Hecker,* 109 Cal. 462, [42 Pac. 307, 30 L. R. A. 403].) The killing being admitted, and the conduct of the defendant up to the moment of the shooting being free from fault, it only remained for the jury to determine from all of the surrounding circumstances whether the conduct of the deceased preceding and at the time of the killing was sufficient to justify the defendant in an honest belief, as a reasonable man, that his life was in danger, or in the fear of immediate great bodily harm at the hands of the deceased. That the jury carefully and favorably considered the remarkable fortitude and self-restraint of the defendant all during the trying ordeal to which he was subjected prior to the shooting is evident by their verdict reducing the killing from mur-

der to manslaughter. A careful reading of the record not only shows a substantial conflict on many of the material points in the case, but reveals sufficient evidence from which the jury might properly have inferred that the killing was not done in self-defense, but was rather the result of a natural resentment smoldering in the breast of the defendant, which was suddenly fanned into a flame of passion by the vile name hurled at him by the deceased immediately before the shooting.

The following is a transcript of the proceedings during a portion of the direct examination of the defendant when he was upon the witness-stand in his own behalf:

"Mr. Klette: Q. Now, I will ask you, Mr. Brown, did you ever at any time receive an injury, or were you ever in any accident where you received any injury?

"Mr. Church: We object to that as incompetent, irrelevant and immaterial.

"The Court: I do not see that that would have any bearing.

"Mr. Klette: Injury to his head, if the court please.

"The Court: You are not offering it for the purpose of proving irresponsibility?

"Mr. Klette: I am simply offering it for whatever weight it may have with the jury one way or the other—basing my case largely on self-defense; but I believe it is a fact which the jury is entitled to know, having what weight it may with the jury.

"Mr. Church: It is irrelevant, incompetent and immaterial at the present time unless they propose to prove a defense by insanity.

"Mr. Klette: I don't think we have to state our object."

Thereupon the objection was sustained by the court, and the ruling is now assigned as error.

In view of the claim of self-defense interposed upon behalf of the defendant, the evidence sought to be elicited by the question objected to was wholly immaterial. Whether or not the defendant could properly unite a plea of insanity with a claim of self-defense under the facts of this case need not be here decided. The fact remains that his sole defense was self-defense; and in the absence of a plea of insanity evidence that at some time in his life defendant had been in an acci-

dent resulting in mental and physical injury was immaterial. (*People* v. *Davis* [Cal.], 36 Pac. 96.) The proposed evidence was *prima facie* immaterial to the issue raised by the defendant's plea of not guilty and the special defense of self-defense; and therefore the trial court was entitled to know specifically the purpose of counsel in asking the question. (*People* v. *Shaw,* 111 Cal. 175, [43 Pac. 593]; *People* v. *Schell,* 123 Cal. 359, [55 Pac. 1006].) It was counsel's duty, in fairness to the court and in aid of the due and orderly administration of justice, to have stated his purpose fully and completely, and his failure to do so upon the record here presented was sufficient to justify the court in sustaining the objection.

The landlady of the lodging-house above the saloon where the killing occurred was called and sworn as a witness in behalf of the defendant. At one point in the examination of this witness counsel for the defendant endeavored to have her tell the jury the details of the altercation which the deceased had with her when the defendant was not present. Following an objection by the district attorney that the question called for immaterial, irrelevant and incompetent testimony, the court and counsel indulged in a general discussion as to the merits of the question and the objection. It nowhere in the record appears that the court ruled upon this particular objection, and as counsel for the defendant did not insist upon an answer to his question, we do not feel called upon to consider or discuss his assignment of error in this behalf. However, later on in the examination of the witness the record discloses the following question, objection and ruling:

"Mr. Klette: Q. Well, I will ask you, Mrs. Leggett, after Miller was standing by the window there, what did he do or say to you?

"Mr. Church: We object to that unless it is shown it was in the presence of the defendant.

"The Court: At present I will sustain the objection."

The objection was properly sustained. The question called for testimony which could only have been the narrative of a past event not occurring in the presence of the defendant. In no sense could it be considered, as it is claimed by counsel

to be, a part of the *res gestae.*　　(*People* v. *Wong Ark,* 96 Cal.
125, [30 Pac. 1115].)

The judgment and order appealed from are affirmed.

Kerrigan, J., and Hall, J., concurred.