[Crim. No. 7005. Second Dist., Div. Three. Aug. 19, 1960.]

THE PEOPLE, Respondent, v. WILLARD E. MURDOCK, Appellant.

Simmons & Simmons and Herbert W. Simmons, Jr., for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

FORD, J.—The defendant appeals from a judgment of conviction of grand theft (Pen. Code, § 487, subd. 1) and from a denial of his motion for a new trial. The judgment was pursuant to the verdict of a jury. The defendant was sentenced to imprisonment in the state prison for the term prescribed by law.

In addition to the contention that there were errors in rulings on the admissibility of evidence, the defendant questions the sufficiency of the evidence to sustain the conviction.

■■ Keeping in mind that on this appeal the evidence is to be viewed in the light most favorable to the prosecution (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778] ; *People* v. *Carnavacci,* 119 Cal.App.2d 14, 16 [258 P.2d 1127] ; *People* v. *Renek,* 105 Cal.App.2d 277, 281 [233 P.2d 43] ; *People* v. *Von Benson,* 38 Cal.App.2d 431, 434 [101 P.2d 527] ), a summary of the evidence which gives support to the determination of the jury will be stated so that its sufficiency can be evaluated. Reference will also be made to certain testimony of the defendant.

Albert Carter had been working for a masonry contractor who owed him $375 in wages. On February 12, 1959, he went to the union hall for the purpose of obtaining an extension of time for the payment of his dues. While Carter was talking to another man, the defendant joined in the conversation. The defendant then telephoned Carter's employer and told him they were coming right over to collect the $375. Carter thought that the defendant was a business agent of the union. The defendant told Carter that he was supposed to collect the money. After conversation between the defendant and the employer at the latter's home, at which time the defendant insisted that Carter be paid in cash rather than by check, they went to the bank. There the employer obtained $375 in cash and handed it to Carter. Carter testified as to what then occurred as follows: ''Well, I was sitting in the back seat [of defendant's automobile] and he paid me $375 and the defendant said—reached back, he said, 'Give me that money,' he said. He said, 'This is not in your care. This is out of your hands. I told you to keep your mouth shut. It's out of your charge. It's got to be presented through the downtown office and it will be presented to you from there.' '' Carter did not hand him the money but the defendant reached back and grabbed it out of his hands. Thereafter, a number of times Carter asked for the money but the defendant told him to keep his mouth shut.

Then they went to the main office of the union. The defendant told Carter to sit in the lobby and that he was going upstairs. Carter did not see the defendant again for about two hours. The defendant came back to the lobby. Later the president called Carter into his office and sent for the defendant. The president asked for the money so that it could be returned to Carter but the defendant did not return the money. The defendant said that Carter had made a loan of the money to him but Carter denied it. Carter returned to the

lobby and waited. Carter again asked for his money and the defendant said, "I've got a deal working." Carter went to see the president again and he called the defendant into his office. Again there was a claim of a loan and a denial. The defendant left the room and was arrested by the police on another charge. Carter followed the defendant to the police station.

M. E. Buckner, a police officer, testified that certain statements were made by the defendant at the police station. In the course thereof, the defendant said that he had informed the president of the union that he had obtained Carter's money for him from his employer but the president did not like it and told him that that was not within his duties as a dispatcher. The president then told him that he wanted him to bring his account of dues which he had collected up to date. The amount was $875 and he was short $375 at the time. So he used Carter's money for that purpose. He further stated that if he had not been arrested he would have collected about $150 in dues at the window in the office and would have borrowed the rest of the money from one of the other dispatchers. The officer testified that at the time of the arrest, which arrest was on a traffic charge, the defendant appeared to be collecting dues at a window in the office. There was a tape recording of the defendant's statements.

The defendant testified on his own behalf. In substance, he testified that at the main union office he asked Carter to lend him the $375 so that he could account to the union as directed by the president and that Carter said that he would on the understanding that he would be repaid later that day.

The evidence submitted by the prosecution amply supported the verdict. ▇▇▇ The nature of the charge of theft under the Penal Code is succinctly stated in *People* v. *Martin,* 153 Cal.App.2d 275, at pages 281-282 [314 P.2d 493] : "Theft is characterized as the felonious taking of property which is not one's own. (Pen. Code, § 484; *People* v. *Moorehead,* 104 Cal. App.2d 688 [232 P.2d 268].) ▇▇▇ Since the amendment in 1927 to section 484 of the Penal Code, an accused may be convicted of grand theft upon proof showing either larceny, embezzlement or obtaining money by false pretenses (*People* v. *Cannon,* 77 Cal.App.2d 678, 688-689 [176 P.2d 409]), and it is unnecessary to specify in the accusatory pleading the kind of grand theft with which the defendant is charged. (*People* v. *Brock,* 21 Cal.App.2d 601 [70 P.2d 210].) ▇▇▇ Embezzle-

ment is the fraudulent misappropriation of property by a person to whom it has been entrusted. (Pen. Code, § 503.)"

 It is immaterial whether the defendant formed an intent to use Carter's money for his own purposes before or after he obtained possession of it. In either case, there was grand theft. The reasoning found on page 284 of the Martin opinion is pertinent: "Where criminal acts may constitute several forms of the theft, depending upon how the evidence is viewed by the court, a judgment of conviction can be sustained upon evidence of any form of the offense. (*People* v. *Corenevsky,* 124 Cal.App.2d 19, 24 [267 P.2d 1048], and cases cited.) If the court believed that a criminal intent was formed before defendant obtained the machines, the conviction was proper upon the theory of larceny by trick and device. (*People* v. *Mason,* 86 Cal.App.2d 445, 452-453 [195 P.2d 60].) If the court believed that defendant did not form an intention to defraud Teague until after he obtained the machines, it could find him guilty of embezzlement. (*People* v. *Walker,* 144 Cal. 1 [77 P. 705] ; *People* v. *Fewkes,* 214 Cal. 142 [4 P.2d 538].) Under either theory, the conviction of grand theft is supported by the evidence."

 The appellant would have this court reweigh the evidence and accept his testimony that there was a loan to him by Carter. This we cannot do under well-established principles relating to appellate review. (*People* v. *Carnavacci, supra,* 119 Cal.App.2d 14, 16.)

 The witness Carter was cross-examined with respect to his testimony to the effect that the defendant had demanded that the employer pay the amount due Carter in cash rather than by check. In an attempt to impeach him, his attention was directed to a portion of his testimony at the preliminary examination. Thereafter, counsel for the defendant requested that a copy be made of the portion of the transcript so used and that it be received in evidence as defendant's exhibit. The court denied the request. There was clearly no error. The usual method of questioning the witness as to prior testimony claimed to be inconsistent with his present testimony had been pursued and the contents of that portion of the transcript were already in the record as a part of such inquiry.

 During the course of the cross-examination of Carter, he was asked, in substance, whether he was familiar with the provision of the contract between the union and Carter's employer as to the payment of employees "every five working days." The objection was made that Carter's knowledge

thereof was immaterial. Before a ruling was made, Carter answered, "I wasn't." The objection was sustained. In his brief on appeal, the defendant states: "The question was asked for the purpose of proving by the testimony of the complaining witness that it was part of the duties of the defendant to make the collection from . . . the contractor on behalf of the complaining witness, Albert Carter. One of the main points involved in the whole case was whether or not defendant had this as part of his ordinary duties or whether or not he was in direct violation of his duties." There was no error. Apart from the fact that the witness had already said that he did not know of the provision, to thus establish the contents of the contract (which counsel desired to show as a basis for a claim of the existence of a duty) would be in violation of the best evidence rule. (*People* v. *Merkouris,* 46 Cal.2d 540, 557 [297 P.2d 999]; *People* v. *Guasti,* 110 Cal.App.2d 456, 462-463 [243 P.2d 59].)

During the course of the direct examination of Officer Buckner, the tape recording of the conversation which the police officers had with the defendant was marked for identification and was later received in evidence without objection when offered by the prosecution. At the request of counsel for the defendant, it was played before the jury. Included therein was a statement by the defendant as to a conversation he said he had had with the president of the union. Thereafter, when the defendant became a witness in his own behalf, he testified that when he and Carter first arrived at the main union office, he went upstairs. Not finding anyone in the field manager's office, he spoke to the president. At that point, the direct examination continued as follows: "Q. And was the president in his office? A. The president was in his office. Q. And will you relate the conversation you had with him? A. Well—— MR. JACOBSON [Deputy District Attorney]: That's calling for hearsay. THE COURT: Sustained. MR. SIMMONS [Counsel for defendant]: Your Honor, yesterday a tape was played and that tape was offered in evidence by the People. That tape contains the alleged conversation between the president and the acting secretary, Dan Harvey, and this witness, the defendant, in respect to this same conversation. I submit upon that basis the conversation should be permitted. I will go further into the foundation and develop who else was there and what time it was."

In his brief, the appellant merely claims that the ruling was erroneous and does not state the purpose of the inquiry or any prejudicial effect of the ruling. We are not

in a position to determine the significance of what the defendant sought to show. (*Cf. People* v. *Owens,* 11 Cal.App.2d 724, 727 [54 P.2d 728].) No offer of proof was made in the trial court. (See *People* v. *Lyons,* 50 Cal.2d 245, 261 [324 P.2d 556]; *People* v. *Brown,* 43 Cal.App.2d 430, 433 [110 P.2d 1059].) If counsel's purpose was not apparent, it was his duty to assist the trial court by an explanation. (See *People* v. *Rivers,* 171 Cal.App.2d 335, 339 [340 P.2d 648]; *People* v. *Bryant,* 157 Cal.App.2d 528, 533 [321 P.2d 45].) ▮ Evidence of prior statements of the defendant which were merely of a self-serving nature could not, of course, be received over the objection of the prosecution because such statements would constitute inadmissible hearsay. (See *People* v. *Huston,* 163 Cal.App.2d 363, 366 [329 P.2d 334]; *People* v. *Porter,* 136 Cal.App.2d 461, 470 [288 P.2d 561].) ▮ There is nothing to clearly indicate that the witness was attempting to explain any statements in the nature of admissions which he had made to the officers or to state his version of any conversations to which Carter had testified. It may be that the purpose was to show that the president of the union had made a demand upon him that he account for and pay over to the union the dues which he had collected in his official capacity. In that event, the defendant was not harmed by the ruling. He testified as follows: "A. I asked Carter, I said, 'Carter, do me a favor. Would you do me a favor?' I said, 'I'm asked by Mr. Harvey to check in.' I said, 'Rather than making two trips to the Valley, I don't have enough money in my pocket to make my book in at this time. I have got to put $500 in my pocket. I says, 'I'd appreciate it if you would loan me your $375. When we go back to the Valley, when we get home, I'll give you your money back.' He said, 'I need my money today. Will it be today?' I said, 'It will be today. Just as soon as we get to the Valley, I'll give you your money back.' Carter said, 'Okay' and I borrowed $90 additional to the $375 and I checked it. Q. And that made enough money to check in? A. That made it, my book up to date. That brought my book up to date." There was no real dispute as to what disposition had been made of Carter's money. The issue was whether such use was with the consent of Carter. Under any view of the matter, there was no prejudicial error.

The final contention of the defendant relates to rulings of the court with respect to certain evidence of prior inconsistent statements which the defendant sought to introduce in impeachment of Carter on the subject of whether he had made

a loan to the defendant, but which the court excluded on the ground that the required foundational questions had not been asked during the cross-examination of Carter. There was no error. (*People* v. *Raven,* 44 Cal.2d 523, 525 [282 P.2d 866] ; *People* v. *Singh,* 182 Cal. 457, 481 [188 P. 987] ; *People* v. *Bartol,* 24 Cal.App. 659, 663 [142 P. 510] ; *People* v. *Holman,* 72 Cal.App.2d 75, 93-97 [164 P.2d 297].)

While the defendant makes no point of it in his brief, the record shows that upon return to court after the noon recess, both sides having rested before that recess with the arguments to the jury being scheduled for the afternoon session, counsel for the defendant said that an attempt had been made during that recess to locate Carter. He then stated to the court: "I ask your Honor to give us permission to reopen the cross-examination of Albert Carter, the complaining witness, so that we can lay the proper foundation for the impeachment of [by] prior inconsistent statements, and I ask the Court for time to locate the complaining witness for this purpose." The request was denied. It was within the discretion of the court to grant or refuse such a request. (*People* v. *Raven, supra,* 44 Cal.2d 523, 526 ; *People* v. *Shaw,* 111 Cal. 171, 177-178 [43 P. 593].) Since the defendant does not appear to feel aggrieved by the denial of the request, we do not feel constrained to hold that there was an abuse of discretion.

The judgment and the order denying the motion for a new trial are affirmed.

Vallée, J., concurred.

Shinn, P. J., concurred in the judgment.