[Crim. No. 7915.   Second Dist., Div. One.   Apr. 17, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES ROGER HANNIE, Defendant and Appellant.

James Roger Hannie, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Edward A. Hinz, Jr., Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of burglary in the second degree and grand theft, and an order denying a motion for a new trial.

In an amended information filed on April 27, 1961, the defendant was charged in count 1 with burglarizing the office of the John Hancock Oil Company in Long Beach on January 23, 1961; in count 2 he was charged with grand theft from John Hancock Oil Company on January 23, 1961. Three prior felony convictions also were charged. The defendant pleaded not guilty to each count and denied the prior convictions. A jury was waived and the cause was submitted by stipulation upon the testimony taken at the preliminary hearing—each side reserving the right to introduce additional evidence. After additional testimony was taken the judge, on May 9, 1961, found defendant guilty as to both counts and further found that the second and third prior convictions as charged were true. Further proceedings were continued to June 1, 1961. Motions for a new trial and probation were denied on June 1, 1961, and defendant was sentenced on said date as prescribed by law. A notice of appeal was filed on or about June 5, 1961.

A résumé of some of the facts as disclosed by the evidence is as follows: on January 23, 1961, Hannie and Warren Rohn discussed the commission of a burglary. Hannie suggested a building located at 270 Randolph Street in Long Beach as a place to burglarize. The building in question is occupied by several different tenants, among them the C.I.T. Corporation and John Hancock Oil Company. Hannie and Rohn proceeded to the office of the C.I.T. Corporation, where Rohn applied pressure with a pry bar to a door and split the casing. Thereupon Hannie and Rohn made an entry and searched the office looking for money. No money was found and the pair proceeded to search other offices in the building, where they also were unsuccessful. Rohn opened the door to the office of the John Hancock Oil Company (which was in the same building) with a screwdriver. An entry and a search of the office was made. The two men pulled two safes in the office to the back door. Near the back door there was a pickup truck with a camper body upon it. The two men hot wired the camper truck and loaded the two safes into the truck. Hannie drove

the truck to Rohn's house and the safes were unloaded and put into the garage. The two safes were opened by the two men with pry bars, a hammer and other equipment.

In the safes the men found some small currency, coins, stocks and bonds, bank notes, a gold watch, insurance papers and other items in the name of the oil company. The insurance papers and some other items were put into the camper unit. The loot was dumped into a box and the cash was divided evenly between Hannie and Rohn. The rest of the loot was kept by Rohn.

The safes were loaded into the camper and the truck was driven approximately one-half mile from Rohn's house and abandoned. The two men then went back to Rohn's house. On January 25, 1961, a deputy sheriff saw the abandoned camper truck with the safes and papers therein. The same were immediately impounded. On January 26, 1961, the secretary to John Hancock identified and took possession of the safes from the sheriff.

On February 1, 1961, Rohn was arrested in Los Angeles. He possessed at the time keys, stock shares and certificates and about 25 bank books, the most of which bore the name "Hancock Oil Company."

On February 8, 1961, Hannie, who was on parole from a prior prison experience, called a Long Beach police officer and said, "I am James Roger Hannie's parole officer," and, "What have you guys got on him down there?" The police officer told the defendant, who thus represented himself to be a parole officer, that he, the police officer, had a warrant of arrest for burglary for Hannie.

On February 9, 1961, Hannie was arrested in Lynwood by a local policeman. The officer asked Hannie his name and Hannie said, "My name is Andy Horvath." Hannie's identification was in the name of Andrew J. Horvath (appellant's half-brother) and consisted of a driver's license, identification card for Convair, and a library card for the Parks Air Force Base.

At the first conversations with the Long Beach police on February 9 or 10 Hannie stated that he did not know why he was arrested, that he had not been at the Rohn residence on the night of January 23 or on the morning of January 24 and knew nothing about any safes.

Appellant now asserts that the evidence is insufficient to support the judgment; that the court erred in sustaining certain objections to a question asked by counsel and that the

court committed prejudicial error with reference to his right to represent himself at the preliminary examination.

Rohn testified at the preliminary examination and involved the defendant as heretofore set forth in the statement of facts. Rohn was patently an accomplice. Appellant contends that there was no corroboration of Rohn's testimony. In this he is in error. Hannie called the Long Beach Police Department and advised them that he was Hannie's parole officer and wanted to know if they, the police, were looking for Hannie for burglary, and furthermore asked what they, the police, had against Hannie. Hannie told the police at the time that he did not know where Hannie was but that he would check it out. When appellant was arrested he gave false identification and told untruths to the officer. He stated that he did not know why he was arrested and that he had not been at the Rohn house at the times in question. Mrs. Rohn, in addition to her husband, testified that Hannie was at their house on the morning of January 24th. The evidence also established a prior burglary which was committed under similar circumstances with which appellant's connection was disclosed. The corroboration meets the test of section 1111, Penal Code, which provides in part as follows:

"A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." (See *People* v. *Lyons,* 50 Cal.2d 245, 257 [324 P.2d 556]; *People* v. *Griffin,* 98 Cal.App.2d 1, 24-28 [219 P.2d 519].) The appellant here impersonated his parole officer and an inference can be drawn from the circumstances that he would not have inquired as to whether he was wanted had he not had some very good reason to do so. Upon his arrest he claimed ignorance of the reason therefor in spite of the fact that the Long Beach police told him (although they thought they were talking to a parole officer) that there was a burglary warrant outstanding for Hannie and Mrs. Rohn stated, as heretofore indicated, that Hannie was at her house on the morning when the safes were opened.

False and contradictory statements of an accused with reference to the crimes charged constitute corroboration evidence by showing a consciousness of guilt and thus admissions of guilt. (*People* v. *Osslo,* 50 Cal.2d 75, 93 [323 P.2d 397]; *People* v. *Santo,* 43 Cal.2d 319, 327 [273 P.2d 249];

*People* v. *Miller,* 185 Cal.App.2d 59, 70-71 [8 Cal.Rptr. 91];
*People* v. *Neely,* 163 Cal.App.2d 289, 301 [329 P.2d 357];
*People* v. *Griffin,* 98 Cal.App.2d 1, 25 [219 P.2d 519]. See
also 2 Wigmore, Evidence (3d ed.) § 276, p. 111.)

Furthermore the accomplice in this case was cor-
roborated by evidence establishing a prior burglary committed
under circumstances similar to the burglary here in question.
The Long Beach branch of the Department of Motor Vehicles
building was broken into on the night of January 21, entry
being accomplished by forcing a rear door; two safes were
moved through a rear door preparatory to loading them onto
a truck. A Long Beach police officer approached the building
and the two men engaged in the burglary fled the scene.
Hannie's fingerprints were found upon the truck which was
to have been used in hauling the safes away and the truck
was later impounded. Hannie made no explanation as to how
his fingerprints came to be upon that truck. Evidence of the
other offenses was admissible under the circumstances. (*People* v. *Grimes,* 113 Cal.App.2d 365, 371 [248 P.2d 130].)

Hannie also contends that the testimony of Rohn was con-
tradicted, that it was of unsound credibility and that it was
not shown to be free and voluntary. The testimony of
the preliminary hearing was submitted pursuant to stipula-
tion. It was for the judge to determine which testimony of
Rohn and what other testimony he preferred to believe.
(*People* v. *Osslo,* 50 Cal.2d 75, 92 [323 P.2d 397].)

There is no merit to the argument that the testimony of
Rohn was of such unsound credibility that this court should
reverse the judgment. (*People* v. *Henderson,* 34 Cal.2d 340,
346 [209 P.2d 785]; *People* v. *Seals,* 191 Cal.App.2d 734, 738
[13 Cal.Rptr. 7].)

There is no evidence to the effect that Rohn did not make
his statements freely and voluntarily.

At the trial the arresting officer told of the events which
occurred on or about February 9, 1961, such as the giving of
the false name and the false identifications. On cross-exami-
nation the following then occurred:

"Q. Did you ask the defendant Hannie if he was involved
in a burglary—strike that.

"Did you inform the defendant Hannie why you were
placing him under arrest? A. Yes, sir.

"Q. Did you tell him it was for burglary? A. Yes.

"Q. Did you ask him if he was involved in it or any such
type of question as that? A. Not at the time of arrest, no.

"Q. Subsequently you did, is that correct? A. Yes.

"Q. That was on February 9th or 10th? A. I believe it was on the 10th.

"Q. I see. Did the defendant Hannie state to you that he had been involved in it?

"MR. COMPTON: I object to it as self-serving. There were no admissions.

"THE COURT: The objection will be sustained.

"Q. BY MR. ARTHUR: It is a fact that the defendant Hannie denied that he had been involved in it, isn't that correct, Officer?

"MR. COMPTON: The same objection, your Honor.

"THE COURT: Sustained.

"MR. ARTHUR: I have no further questions.

"MR. COMPTON: That is all."

Appellant now asserts that, "When one part of [a] statement made by [a] defendant in [a] criminal action has been introduced as evidence against him, it is his right to have in evidence [the] entire statement, including any part of his declaration that would be in his favor."

In *People* v. *Murdock,* 183 Cal.App.2d 861, 868 [7 Cal. Rptr. 293], it is in part stated as follows: "Evidence of prior statements of the defendant which were merely of a self-serving nature could not, of course, be received over the objection of the prosecution because such statements would constitute inadmissible hearsay. (See *People* v. *Huston,* 163 Cal.App.2d 363, 366 [329 P.2d 334]. . . .)"

The record in this case was not at all clear whether the question related to what was said at the time of the arrest or whether it relates to a time subsequent to the arrest. In any event there was no prejudicial or reversible error in the ruling of the trial judge.

■ The appellant at the preliminary hearing made a motion for a continuance which was denied. His hired counsel was not present and the judge thereupon appointed the public defender to assist him. Hannie now asserts that the services of the public defender were forced upon him and he was not permitted to represent himself. At the trial Hannie was represented by counsel of his own choice. No motion was made to set aside the information under section 995 of the Penal Code. Appellant is now precluded from objecting upon this ground. (*People* v. *Greene,* 80 Cal.App.2d 745, 749 [182 P.2d 576].) Furthermore the testimony taken at the preliminary hearing was placed before the trial judge by stipulation

of the appellant and his counsel and the prosecution. There was no prejudicial error committed. (*People* v. *Marcus,* 133 Cal.App.2d 579, 583 [284 P.2d 848].) The record demonstrates in this case that under the circumstances the defendant was well represented at all stages of the proceeding.

The judgment and the order denying the motion for a new trial are and each of them is affirmed.

Wood, P. J., and Lillie, J., concurred.