[Crim. No. 2968.   First Dist., Div. One.   Oct. 26, 1954.]

THE PEOPLE, Respondent, v. ERNIE CANDIOTTO, Appellant.

Leslie C. Gillen for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Charles E. McClung, Deputy Attorney General, for Respondent.

WOOD (Fred B.), J.—Convicted of violating section 11500 of the Health and Safety Code, possession of marijuana, defendant has appealed from the judgment and from an order denying a new trial.

He does not claim that the evidence was insufficient to support the verdict. He does claim prejudicial error in the asserted failure of the trial court to instruct the jury adequately on certain questions and prejudicial error because of asserted misconduct of the trial judge. A brief summary of the principal facts in evidence will aid the discussion.

While watching an automobile (which it developed belonged to defendant) parked outside a certain hotel in San Francisco, three narcotic agents saw defendant leave the hotel and approach the car.

The agents identified themselves, told defendant they would like to search his room (which was in the hotel mentioned) and he willingly allowed them to do so. He was told he was suspected of possessing narcotics. Search was made. No narcotics were found on defendant's person. Agent Mulgannon found a paper bag containing 52 grains of marijuana seeds on the hat shelf in the clothes closet and immediately announced his find as marijuana and exhibited it to the others

in the room. He found a second bag (containing 157 grains) in the wastepaper basket and similarly announced the find. He found a partially smoked marijuana cigarette under the shelf paper of a bureau drawer which he also announced in defendant's presence. Defendant said that the marijuana was his, that none of it belonged to his wife, that he would like to smoke the remaining portion of the marijuana cigarette, and that he had obtained the marijuana from one Bob in Los Angeles, which story he changed to make its source one Connie in the Twin Peaks area of San Francisco.

Agent Bautista left the hotel room to search defendant's car. He looked on the floor and on the seat, making what he described as a superficial search. At that time he did not have in his possession the marijuana which had been found in defendant's room and he found no narcotics in the automobile. Later, he put the marijuana which had been found in defendant's room in his pocket and drove defendant's car to a garage. The next day Agent Trainor found a few scattered marijuana seeds on the driver's seat and on the floor board, two grains in all.

At the trial defendant testified that the marijuana had been found in his room as the agents said and that he then and there claimed it to take the blame against the contingency that it belonged to his girl friend, who also occupied the room. He testified that the marijuana was not his or hers and that he had no knowledge of its existence or presence in the room until the agents found it. He denied ever having seen any such substance in his car. He testified he had loaned his car to someone that day; also that several friends of his had been in his hotel room earlier and at one time he had left them alone in the room while he went downstairs for a package of cigarettes. He also testified that he knows what marijuana is and recognizes it when he sees it.

(1) *Was it prejudicial error, under the circumstances of this case,* to refuse to give a requested instruction which would have informed the jury that knowledge of the narcotic character of the thing possessed was an essential ingredient of the offense charged?

We entertain no doubt that knowledge of the narcotic character of the thing possessed is an essential ingredient of the possession denounced by section 11500 of the Health and Safety Code. Yet, so vigorous is the state's criticism of this concept, it seems desirable to make a fairly comprehensive review of the recent case law on the subject.

In *People* v. *Gory,* 28 Cal.2d 450 [170 P.2d 433], it was deemed erroneous to reject an instruction that " 'In order for defendant to have in his possession the objects charged in the information, you must be convinced by the evidence and beyond a reasonable doubt that he *knowingly* had such objects in his possession. The meaning of the word "possession" includes the exercise of dominion and control over the thing possessed.' " (P. 453.) The use in this instruction of the words "the objects charged in the information" and the words "such objects" operated as a reference to the words "flowering tops and leaves of Indian Hemp (cannabis sativa)" used in the information. The word "knowingly," said the court, imports " '. . . a knowledge that the facts exist which bring the act or omission within the provisions of this code . . .' " (P. 456.)

In *People* v. *Cole,* 113 Cal.App.2d 253 [248 P.2d 141][1] the charges were "possession" and "transportation" of marijuana. The giving of the following instruction was held erroneous: " 'While there must be unity of act and intent in every public offense, it is not necessary that the evidence show that the defendant knew that the object or objects which he possessed *were narcotics* or were prohibited by law, so long as . . . he had knowledge of the existence and location of such object or objects and intended to maintain physical control thereof.' " (P. 258.) Of this the reviewing court said: "The italicized words were erroneous as we understand the law. Under this instruction if the defendant possessed marijuana, honestly believing it to be an innocuous substance such as alfalfa or tobacco he would still be guilty. While a specific intent to violate the law is not an ingredient of the crime of possession of a narcotic, 'a knowledge that *the facts exist* which bring the act within the provisions of this code' is necessary. (*People* v. *Gory,* 28 Cal.2d 450, 456 [170 P.2d 433].) One of the facts of which a defendant must have knowledge is that the article is a narcotic, because that is one of the facts, indeed the essential fact, 'which bring(s) the act within the provisions of this code.' To instruct as the court did in this case that it is not necessary 'that the defendant knew that the object or objects which he possessed were narcotics' is to authorize the conviction of a defendant who possessed marijuana in the honest belief that it was not marijuana. If that is the law then if I am given marijuana ciga-

---

[1] A petition for a hearing by the Supreme Court was denied.

rettes, in a package of one of the standard brands of cigarettes made of tobacco, and retain it in my possession in the honest and innocent belief that it is a package of that brand of cigarettes I am nonetheless guilty of a felony, or if I cut a weed from the roadside which is in fact marijuana and use it as a part of a floral decoration in my home not knowing its narcotic character I am equally guilty. It is axiomatic that all laws must be reasonably construed and such a construction would so clearly pass the bounds of reason as to be unthinkable." (P. 258.)

Other decisions subsequent to *People* v. *Gory, supra,* recognize this requirement. In the following cases, when determining whether the evidence was sufficient to support a verdict of conviction of possession of narcotics, the reviewing court made these observations: "While the mere presence at the scene of the crime, standing alone, is not sufficient to sustain a finding of guilt, and while actual knowledge of the presence of narcotic substance is essential in such a case as this, the surrounding facts and circumstances may be sufficient to establish the essential facts of knowledge, and physical or constructive possession." (*People* v. *Gentry,* 118 Cal. App.2d 501, 503 [257 P.2d 1012]); the evidence was held "insufficient to prove the defendant sold the heroin to the operator or that he had possession or knowledge of the presence of heroin in the closet." (*People* v. *Barnett,* 118 Cal.App. 2d 336, 339 [257 P.2d 1041]);[2] "the prosecution must establish that the defendant had knowledge of the presence of the article and that it was marijuana" (*People* v. *Batwin,* 120 Cal.App.2d 825, 827 [262 P.2d 88]); "In order to sustain a conviction of possession of narcotics it must be shown that the defendant had either physical or constructive possession, and that he was aware that the substance of which he had possession was a narcotic" (*People* v. *Walker,* 121 Cal.App.2d 173, 174 [262 P.2d 640]);[3] "basically the question is, where a

---

[2]A petition for a hearing by the Supreme Court was denied.

[3]The same court, in the earlier case of *People* v. *Rumley,* 100 Cal. App.2d 6 [222 P.2d 913], had said that "knowledge that it was marijuana" is not "an element of the offense" (p. 9) but on the same page the court observed that the evidence proved that the defendant "knew of the narcotic qualities of the cigarettes."

In the later case of *People* v. *Ybarra,* 127 Cal.App.2d 74 [273 P.2d 284], the same court held the following instructions not ambiguous or contradictory: " 'The knowledge which is a required element to constitute possession is a knowledge of the fact that the person in question has possession of the prohibited drug. In other words, whenever a person knows that he has an article in his possession he has the knowledge which is required to constitute possession. It is not necessary

defendant is found in sole occupancy of premises with the key to a locked room on his person, he .admits being in the room the day before and narcotics are found therein, may the jury fairly draw the inference that he knowingly possessed the narcotics?" (*People* v. *Neal*, 122 Cal.App.2d 749, 751 [265 P.2d 525]); "the opinion in that case [*People* v. *Cole, supra,* 113 Cal.App.2d 253] is one which the authorities should understand and respect" (*People* v. *Rice*, 123 Cal.App.2d 124, 125 [266 P.2d 200]). In *People* v. *Lotrean*, 120 Cal.App.2d 583, 584 [261 P.2d 543], the court made a like interpretation of *People* v. *Gory, supra,* 28 Cal.2d 450, saying: "In that case our Supreme Court states the rule that knowledge in relation to a defendant's awareness of the presence of narcotics is a basic element of the offense of possession. And in that case a conviction for possession of marijuana was reversed because the trial court withdrew from the jury an instruction that to sustain a conviction the accused should have been aware of his possession of the proscribed narcotic."[4]

Thus it clearly appears that knowledge of the narcotic character of the article possessed is a necessary ingredient of the offense.[5] The jury should have been so instructed.

---

that he knows the specific character of the article which he possesses.' "
(P. 79.) While we would not be inclined to agree that such an instruction clearly and accurately informs the jury concerning the required element of knowledge, we observe that the court did not indicate an intent to depart from the rationale of the Walker case. It said, in part, "The first sentence quoted above points out that knowledge is a required element to constitute possession and that it is 'knowledge of the fact that the person in question has possession of the prohibited drug.' " (P. 79.)

[4]In the Lotrean case the court interpreted as the substantial equivalent of the instruction approved in the Gory case, an instruction identical to No. 9 in our case (CALJIC No. 703). We do not interpret that instruction as informing the jury that defendant must have knowledge that the objects possessed were narcotics. Nor does either party to this action so view that instruction. Nor do the authors and publishers of that instruction so view it; clearly indicated by their comments in the note to Instruction No. 703 in the 1953 Pocket Parts Supplement to CALJIC.

[5]The following cases have been cited in support of the opposite view but analysis does not persuade us that they necessarily support that view.

In *People* v. *Bigelow*, 104 Cal.App.2d 380 [231 P.2d 881], an instruction identical to Instruction No. 9 in our case was given but the appellant did not question its propriety or adequacy. In summarizing the evidence the reviewing court observed it was sufficient to establish that Bigelow possessed the narcotic, that he had knowledge of its presence "and that he knew the substance in his possession was a narcotic" (p. 385); the same court which decided *People* v. *Batwin, supra,* 120 Cal. App.2d 825.

In *People* v. *Brickman*, 119 Cal.App.2d 253 [259 P.2d 917], the

■ In the instant case these instructions on possession were given: "[7] To constitute unlawful possession of a narcotic, it is not necessary that there be any specific intent on the part of the possessor. It is essential, however, that the defendant have possession knowingly, since there can be no criminal possession of an article without knowledge of its existence and presence. [8] If you find from the evidence that the defendant had possession of narcotics, as I have defined, and as I shall further define the term 'possession,' then you are instructed that it is immaterial whether he knew that such possession was unlawful, or whether he intended to violate the law, and it is likewise immaterial what were his motives and purposes in such possession. [9] Within the meaning of the law, a person is in possession of a narcotic when it is under his dominion and control, and, to his knowledge, either is carried on his person or is in his presence and custody, or, if not on his person or in his presence, the possession thereof is immediate, accessible, and exclusive to him, . . . provided, however, that two or more persons may have joint possession of a narcotic if jointly and knowingly they have the dominion, control and exclusive possession I have described.'' (Numbered here for convenience of reference; No. 9 is CALJIC 703.)

These instructions told the jury that defendant must knowingly have possession of the narcotics[6] but failed to tell the jury that defendant "knew that the object or objects which he possessed were narcotics," as requested by defendant. Because of such failure they were erroneous.

It does not necessarily follow that this was reversible error. Under the instructions given, we imply from the verdict a finding by the jury that defendant knew of the existence and presence of the article or substance contained in the paper bags and in the partly smoked cigarette found in his room. His testimony that he knows what marijuana is and recog-

appellant complained that the trial court failed to instruct that the jury must be convinced beyond reasonable doubt that the defendant ''had knowledge of the presence of the marijuana'' (p. 263), but that question was not available for consideration and decision by the reviewing court because the appellant had failed to have the instructions incorporated in the record upon appeal. That was the same reviewing court which later decided *People* v. *Lotrean, supra,* 120 Cal.App.2d 583.

[6]Defendant claims that Instruction No. 9 was additionally defective for failing to repeat the words ''to his knowledge'' after the words ''if not on his person or in his presence.'' That is not correct. The words ''to his knowledge'' modify everything that follows, down to the proviso which in turn uses the word ''knowingly.''

nizes it when he sees it furnishes clear and unequivocal proof that he knew the narcotic character of the article or substance which the jury found he knew was in his possession, emphasized by the reasons he gave upon the witness stand for the statements he made to the officers when they made the discovery in his room. He testified he immediately claimed the marijuana as his own because he thought it might belong to his girl friend and he wanted to ''protect'' her and ''take the blame for it.'' He testified he asked one of the officers for permission to smoke the partially smoked marijuana cigarette knowing it would be ''impossible for him to give it to me, and let me smoke it, but, neverthless, it would plant in their mind it was mine, and, I don't know, to protect somebody that I thought might have been guilty, that is why I said it, asked him that type of question.'' There can be no doubt that defendant knew the material was marijuana and a narcotic. The error under discussion was without prejudice.

(2) *Was it prejudicial error to fail to instruct that where, as here, circumstantial evidence is relied upon by the People it must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion?*

Proof of the requisite knowledge of the physical presence of the substance (marijuana) and also of the requisite knowledge of the narcotic nature of that substance depended upon circumstantial evidence if section 1832 of the Code of Civil Procedure is applicable. That section defines ''indirect evidence,'' giving this as an example: ''a witness proves an admission of the party to the fact in dispute. This proves a fact, from which the fact in dispute is inferred.'' Our Supreme Court had observed that in ''other jurisdictions evidence of oral confessions is direct and not circumstantial evidence'' but that under section 1832 ''the testimony of a witness that the defendant admitted guilt would seem to be direct evidence that an admission or confession was made by defendant but circumstantial evidence of the truth of what was admitted.'' (*People* v. *Koenig,* 29 Cal.2d 87, 91 [173 P.2d 1].) The question was whether the trial court should have advised the jury that to justify a conviction the facts or circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion. For the purpose of deciding that question the court held: ''Whether or not all evidence of oral confessions or admissions must be considered as circumstantial evidence under section 1832, we will assume, for

the purpose of this case, that all of the evidence against appellant was circumstantial." (P. 91.) That seems controlling here. The only difference is that in the Koenig case the defendant denied on the witness stand that he had made any of the out-of-court admissions whereas here the defendant testified that he made the statements ascribed to him by other witnesses. That, we think, bears only upon the degree of authentication; does not change the character of the out-of-court statements from indirect to direct evidence.

The testimony of the arresting officers was direct evidence as to the presence of marijuana in defendant's hotel room and of 12 seeds of marijuana on the seat and floor of his automobile, but it was merely indirect or circumstantial evidence of his knowledge thereof. The testimony of the officers was direct evidence that at the time of the discovery of the marijuana defendant admitted it was his but such admission was merely indirect or circumstantial evidence that he knew of its presence and of its narcotic character. Upon the witness stand he denied ownership and knowledge of the presence of the marijuana, declaring that his out-of-court statement was untrue and made to protect a friend who might have owned and put it there, and that third persons had access to his room and his car.

In such a case it is error if the court fails, as it did here, to instruct the jury that to justify a conviction the facts or circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion, an instruction which the court should give upon its own motion. (*People* v. *Bender*, 27 Cal.2d 164, 174-176 [163 P.2d 8]. See also *People* v. *Koenig, supra*, 29 Cal.2d 87, 91-93; *People* v. *Zerillo*, 36 Cal.2d 222, 233 [223 P.2d 223]; *People* v. *Hatchett*, 63 Cal.App.2d 144, 152-156 [146 P.2d 469]; *People* v. *Tholke*, 75 Cal.App.2d 857, 859-861 [171 P.2d 904]; *People* v. *Webster*, 79 Cal.App.2d 321, 327-329 [179 P.2d 633].) The failure to give the instruction was found prejudicially erroneous and cause for reversal in the Zerillo, Hatchett, Rayol and Tholke cases; erroneous but not prejudicial in the Bender, Koenig and Webster cases.

In the instant case the instructions given included CALJIC Nos. 24, 25, and 26, but nothing comparable to CALJIC 27 or 28. They were, therefore, inadequate and erroneous in the same respect and for the same reason that the instructions given in the Bender and other cases cited were inadequate and erroneous.

Plaintiff contends that when the evidence is primarily direct and the circumstantial evidence is merely incidental or corroborative, the jury need not be instructed that the evidence must be irreconcilable with the theory of innocence. That is true within the meaning of such statements as made in *People* v. *Jerman,* 29 Cal.2d 189 [173 P.2d 805], and *People* v. *Harmon,* 89 Cal.App.2d 55 [200 P.2d 32]. In the Jerman case, the defendant's own testimony gave evidence of every element of the charge. Hence, every element of the charge was covered by direct evidence, none thereof depended upon circumstantial evidence. Obviously, in such a case, the circumstantial evidence was "incidental" or "corrobora-. tive"; the evidence relied upon was "primarily" direct; and by definition the rule under discussion did not apply. Similarly, in the Harmon case, the reviewing court, having found that the accused "admitted the possession of narcotics" (p. 61 of 89 Cal.App.2d, presumably an admission made on the witness stand), concluded that this and other direct evidence relegated the circumstantial evidence to a secondary position; no element of the charge depended primarily or solely upon circumstantial evidence. If proof of a significant element of the charge depends upon circumstantial evidence, the instruction should be given. Thus, in *People* v. *Hatchett, supra,* 63 Cal.App.2d 144, the defendant, under prosecution for murder, admitted the shooting but claimed it was done in self-defense. The state's evidence bearing upon that issue was almost wholly circumstantial. Failure to give the instruction was cause for reversal of the judgment. In *People* v. *Rayol,* 65 Cal.App.2d 462 [150 P.2d 812], there was direct evidence (testimony of witnesses) of the physical acts committed but the question whether or not the defendant was a knowing participant rested entirely upon circumstantial evidence. Judgment was reversed for failure to give the instruction. Similarly, in the instant case, proof of defendant's knowledge wholly depended upon circumstantial evidence.

In the instant case, the failure to include in the instructions given a direct statement of the precise principle under discussion was error.

██ It was not necessarily prejudicial error. The .same factors which we considered in ascertaining whether the defect in the instructions concerning knowledge was prejudicial obtain here. The circumstances relied upon by the prosecution including defendant's out-of-court admissions, point to the defendant as a person aware of the presence of the marijuana

and aware of its narcotic character. His testimony explaining those admissions tended to strengthen these inferences concerning the state of his knowledge, as we have seen. We can but conclude that under the circumstances of this case the failure to give the instruction under discussion did not result in a verdict different from that which would have been rendered had the instruction been given.

(3) *Defendant assigns as prejudicial error the giving of certain instructions on admissions and the failure to give instructions on confessions.*

■ The court, observing that evidence had been received tending to show that defendant had made an out-of-court statement tending to prove his guilt, defined an ''admission,'' as distinguished from a confession, and admonished the jury to view with caution the testimony of any witness which purports to relate an oral admission of the defendant.

Defendant does not question the correctness of this instruction, as concerns admissions, but does complain that the court unnecessarily three times told the jury that this instruction did not apply to admission made on the witness stand. That may have been unnecessary emphasis but, considered in its context, we do not find it prejudicial.

■ Defendant further questions this instruction because the court did not also instruct the jury on the subject of confessions by fully defining a confession and informing the jury that a confession must be voluntary; that even if voluntary, the jury must determine whether or not it is truthful; that testimony which purports to relate an oral confession must be viewed with caution; and that before a confession can be considered, there must be independent proof of the corpus delicti—all as more fully expressed in the third and fourth paragraphs of CALJIC No. 29 and in Nos. 29-A, 29-B, 29-C and 29-D.

It is not certain that the admission in question amounted to a confession. However that may be, we find no basis for reversal in the failure to instruct.

The officer's testimony which narrated the admission went in without objection. During the examination and cross-examination of the officer on this subject no suggestion was made or question raised as to the voluntary character of the admission. Defendant freely testified to the like effect; he said he ''immediately claimed it [the marijuana],'' to protect his girl friend. This by defendant's own testimony, indicates a voluntary act, nothing of an involuntary character.

The mere fact that a confession is made to a police officer while under arrest does not necessarily render it involuntary. (*People* v. *Mehaffey*, 32 Cal.2d 535, 548 [197 P.2d 12].) His motivation did not render his declaration of ownership involuntary. As said of the defendant in *People* v. *Hubbell*, 54 Cal.App.2d 49, 75 [128 P.2d 579], "[h]is desire to save the children from being brought into court did not tend any more strongly to show an involuntary nature of the confession than did the wish of the defendant in *People* v. *Smalling* (1892), 94 Cal. 112, 113 [29 P. 421], to take responsibility for the crime upon himself in order to free his sister, who was also under arrest, which motive was held not to invalidate his confession as material and competent evidence. It must be apparent that a confession dictated by the hopes and motives of the accused and inspired solely by his own mental processes and emotions is voluntary in a legal sense." Normally, the question whether a confession was freely and voluntarily made is presented preliminarily to the trial court before its introduction in evidence. (See cases collected in 8 Cal. Jur. 115, Crim. Law, § 205.) Defendant did not then raise any question, did not interpose any objection to the officer's testimony on this subject, and later defendant gave testimonial confirmation of his out-of-court statements as narrated by the officers.

Finally, there was evidence of the corpus delicti (the testimony of the officers of their finding of the marijuana in defendant's room) independent of defendant's out-of-court admission, evidence which is without conflict and is undisputed.

Under these circumstances, it was incumbent upon defendant to request instructions upon these subjects. In the absence of such a request it was not error for the court to fail to give them.

(4) *Defendant makes numerous assignments of asserted judicial misconduct.* He claims that the judge created an atmosphere of hostility toward defendant and his counsel and prevented defendant from having a fair trial. He likens this case to *People* v. *Burns,* 109 Cal.App.2d 524, 542-552 [241 P.2d 308, 242 P.2d 9]. Instead, we find it quite comparable to the situation which obtained in *People* v. *Deacon,* 117 Cal.App.2d 206 [255 P.2d 98].

The incidents complained of consist principally of interruption by the court in cases of nonresponsive answers, immaterial questions, argumentative questions and poorly taken objections. In some instances the court asked questions

of a witness to clarify his testimony or to bring out some feature of his testimony in greater detail. Such conduct is properly within the scope of the functions of the trial court, and we cannot say from the record that the court below acted in a manner unfair to the defendant.

In one instance the court did unnecessarily curtail defendant's cross-examination of a witness. The chemist had given his analysis of the substance found in defendant's room and in his car. Defendant's counsel asked him if the seeds found in the car had been smoked. The court upon its own motion disallowed the question on the ground that the question of addiction is no part of the charge in this case. In support of the question counsel merely urged that it was cross-examination. Later, when defendant was on the witness stand, his counsel asked him if he ever smoked marijuana cigarettes. The court volunteered: "That is not material. That isn't the question before the jury, the use of marijuana." Defense counsel thereupon started to give a specific reason why the question was proper, saying: "If I may be heard, the officer testified——" The court responded: "Wait a minute, please. I will ask for an offer of proof, without the presence of the jury." That was done. The judge promptly changed his ruling and allowed the question. Had counsel assisted the court as efficiently in the first instance as in the second, it is conceivable that the first question would have been allowed. Certainly, the disallowance of the first question was not misconduct, nor do we find it prejudicial.

Under these circumstances, defendant having failed to object, at the time of their occurrence, that the incidents in question constituted judicial misconduct, he cannot now successfully urge that objection as a ground for reversal. (*People v. Avery*, 35 Cal.2d 487, 493 [218 P.2d 527, 21 A.L.R.2d 639].)

The judgment and the order appealed from are affirmed.

Peters, P. J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 24, 1954. Carter, J., was of the opinion that the petition should be granted.