[Crim. No. 2974. First Dist., Div. One. Nov. 17, 1954.]

THE PEOPLE, Respondent, v. RAUL PEREZ, Appellant.

Gregory S. Stout for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Respondent.

BRAY, J.—Defendant appeals from his jury conviction for violation of section 11500, Health and Safety Code (possession of marijuana).

## QUESTIONS PRESENTED

Alleged error in rulings on evidence and in refusing to give certain instructions. No attack is made on the sufficiency of the evidence.

## EVIDENCE

On December 29, 1952, 10:30 a. m., Officers Etherington and White of the San Francisco Police Bureau of Special Services and Lamport and Hernandez of the San Mateo County District Attorney's office entered room 421 of the Yuba Hotel in San Francisco. Admitted by one Dolores Johnson, they found defendant in bed. Defendant's person, the bed and bedding and the contents of the room were searched without finding any contraband. Lamport then searched the closet, on the floor of which was soiled wearing apparel. He found under the clothing and on the floor a marijuana cigarette. Lamport called Etherington to the closet and pointed out the cigarette. Etherington picked it up and showed it to defendant. Defendant admittedly denied knowledge of its presence and claimed the officers were trying to "frame" him. Denying that they were so doing, Etherington pointed out to defendant that the cigarette was free from dust. Defendant did not comment. The officers then commenced questioning Dolores, whereupon defendant stated, "Leave her out of this, she has nothing to do with this." Defendant asked Lamport to step out into the hall with him. Hernandez and Etherington went along. There defendant asked the officers to give him a break. They said they would "if he would turn his connections." Defendant then stated he would get the authori-

ties a four or five ounce can of heroin and a four or five pound case of marijuana. The officers agreed to withhold the evidence until he produced these cases. Defendant stated he would call either Lamport or Etherington within two days. The officers turned him loose. On the stand defendant denied all knowledge of the cigarette and stated that he agreed to get the cases of narcotics because the officers threatened him with arrest if he did not. He stated that he tried unsuccessfully to get the narcotics, had even started using heroin again in this behalf. He had phoned Lamport twice to report his failure, actually reaching him on one occasion.

Subsequent to the incident in his hotel room and before being arrested on this charge, defendant pleaded guilty to the independent charge of being a narcotic addict (using heroin). At the preliminary examination on the instant charge he pleaded guilty. Subsequently, in the superior court, he was permitted to change his plea to not guilty. He was represented by counsel when he pleaded guilty. He apparently thought that by doing so he would get a county jail sentence which he could serve concurrently with the 90-day sentence he was serving for addiction. However, he did not claim that any officer or official had told him so; in fact he stated that none had done so. He admitted making the statement that he would be willing to accept a six months' confinement at the San Francisco county jail, where he was serving out the addiction penalty, on the instant charge.

### 1. *No Search Warrant.*

██ The trial court sustained an objection to defendant's question of Inspector Etherington as to whether the officers had a search warrant when they entered defendant's hotel room. In *People* v. *Berger,* *(Cal.App.) 274 P.2d 514, this court in an opinion written by Mr. Justice Fred B. Wood, traced the history in California of the rule that evidence is evidence no matter how illegally obtained. (See *People* v. *Kelley,* 22 Cal.2d 169, 172 [137 P.2d 1].) The Supreme Court granted a hearing in the Berger case, and presumably will consider this rule further. However, at the present time the trial court and this court are bound by it. Therefore the question of whether or not the officers here had a search warrant is both immaterial and irrelevant. Hence the court properly ruled.

---

*A hearing was granted by the Supreme Court on October 28, 1954.

## 2. *Impeachment.*

■■ At the preliminary examination Etherington testified that Lamport, after showing defendant the cigarette, told defendant that with "your background you know some of the big dope fiends" to which defendant replied that he "would be willing to produce some of the narcotic peddlers if we gave him a break on the cigarette . . ." At the trial Etherington testified that both he and Lamport told defendant that "we knew he was a big dealer," "You are one of the biggest peddlers to juveniles in San Francisco and San Mateo County," "You already have one of the boys out in the Misson involved deeply in narcotics," and that defendant was supplying narcotics in San Mateo County also. The court refused to admit the above testimony given at the preliminary examination on the ground that it did not differ from that given on the trial. Obviously there is quite a difference between accusing a man of knowing big dope peddlers and of being one himself. Again, a comparison of the testimony of the witness at the two different times shows that the witness in giving the same conversation certainly "piled it on" at the trial. The jury was entitled to compare the two versions, not for the purpose of determining whether defendant was a big peddler or only knew those who were, but as bearing on the credibility of the officer's testimony, so that the jury could determine whether the witness " '. . . has made at another time inconsistent and contradictory statements regarding a material issue, which statements are in conflict with his testimony at the trial,' " the test of impeachment given in *People* v. *McCoy,* 25 Cal.2d 177, 186 [153 P.2d 315]. The evidence should have been admitted. However, we cannot say that it was prejudicial. Defendant admitted agreeing to obtain heroin and marijuana for the officers, and taking all the circumstances of the case, the failure to admit this evidence could not have affected the verdict.

## 3. *Prior Search.*

■ On cross-examination defendant asked Inspector Lamport if in one of the conversations at defendant's room, defendant had not stated that about three days before agents from the Bureau of Narcotics Enforcement had been in the room and found nothing. Objection to this question was sustained. We think properly so. This statement was not concerning the then transaction but was merely a self-serving declaration that in itself would have no bearing on whether

Perez possessed narcotics on the day in question, at least three days later. It was not relevant. (See *People* v. *Dabb*, 32 Cal.2d 491 [197 P.2d 1].) Nor does the statement fall within the *res gestae* rule which requires that it be the natural and spontaneous outgrowth of the act, and not the mere relation of a past transaction. (*People* v. *O'Donnell*, 11 Cal.2d 666 [81 P.2d 939]; *People* v. *Brown*, 15 Cal.App. 393 [114 P. 1004].) Nor was it admissible under the rule of section 1854, Code of Civil Procedure, that when part of a conversation is admitted the opposite party may have the entire conversation admitted. ■ The rule "is necessarily subject to the qualification that the court may exclude those portions of the conversation not relevant to the items or subject matter thereof which have been introduced." (*People* v. *Hymer*, 118 Cal.App.2d 28, 35 [257 P.2d 63]; see also *People* v. *Richards*, 74 Cal.App.2d 279, 288 [168 P.2d 435].)

### 4. Hypodermic Needle Marks.

On direct examination Inspector Etherington testified that he searched the defendant as he lay in bed. On cross-examination defendant asked the witness if he examined defendant's person. The witness replied that he did. Thereupon defendant asked, "you found nothing of an unusual nature on his person? A. Well, I—— Q. No contraband? . . . The Witness: No contraband." On redirect, plaintiff asked if the witness saw any marks on defendant's body. Defendant's objection to the witness testifying to the marks was overruled. The witness then stated that he found on the inner folds of defendant's arms marks of a hypodermic needle. Marijuana is not administered by needle. Defendant testified that he had used heroin for over a year and a half prior. We can find no case and have been cited to none discussing the question of admissibility of evidence of scars from use of a needle-requiring drug on the question of possession of a nonneedle-requiring one. In *People* v. *Gin Hauk Jue*, 93 Cal.App.2d 72, 75 [208 P.2d 717], in a prosecution for possession of opium, it was held that evidence that defendant's arms showed puncture marks, apparently made by hypodermic needles, was admissible as a circumstance showing possession by defendant of the opium found by the officers. However, there the defendant had denied possession of a hypodermic needle and opium found in his room and had claimed that a solution containing opium also found there and which was shown to be of the type used in needles was merely a mouth

wash. ▮ Evidence of use of hypodermic needles unquestionably is a circumstance indicating a defendant's knowledge of a narcotic which is administered that way and of its possession. But is that true concerning a narcotic which is not administered that way? ▮ Prior addiction to marijuana would be relevant to the issue of "guilty knowledge" of marijuana's nature (it was so held of prior use of opium on the charge of possession of opium in *People* v. *Gin Hauk Jue, supra*); but prior use of heroin is not necessarily relevant to a guilty knowledge of the less dangerous narcotic, marijuana. ▮ In any event, there could have been no prejudice in the admission of this testimony. The case abounds with evidence of defendant's prior addiction to heroin. Among other instances, he testified, on questioning by his own counsel, that he "again" returned to the use of heroin four or five days after the incident in his room. Moreover, there was considerable controversy over the length of time which had elapsed since he last used heroin prior to the incident in his room. Defendant also brought out that on another occasion defendant had "Drug user's paraphernalia" consisting of a hypodermic needle and an eyedropper in his possession. Again, defendant, later, of his own volition and after the district attorney first objected and then withdrew his objection, exhibited the marks on his arm to the jury. As said in *People* v. *Gin Hauk Jue, supra*, where the defendant admitted that he had been a user of narcotics for some time, he could not be erroneously prejudiced by the testimony produced.

## 5. *Prior Narcotic Episodes.*

▮ Defendant testified that he had used both heroin and marijuana prior to the instant incident, that he had not used marijuana for about a year and heroin from 12 to 18 months prior. He also testified that he had not used narcotics from 18 months to two years before the trial. (Defendant later admitted that this was "a false statement, not purposely, but it just happened.") He was then asked over objection if there was a prior occasion when he became unconscious from an overdose in South San Francisco. Apparently this subject was introduced for two purposes, to show that defendant had used heroin later than he claimed, and also to show the relationship that existed between Officer Lamport and defendant, as Lamport testified that at that time at the hospital, in the presence of defendant's wife and mother, Lamport agreed to give defendant another chance in exchange

for his promise not to use narcotics again. In view of defendant's testimony this evidence was admissible.

 Defendant objected to a question asked him concerning his conversation as to whether Lamport had not offered to turn defendant loose if he would go to work, straighten up and take care of his family. Defendant's answer was "No, I don't believe that that was the, shall we say, the terms that he was to turn me loose on. No, they weren't the terms; had nothing to do with my wife or the children." The purpose of eliciting this evidence was to overcome the intimation of bias and prejudice raised by defendant's intimation that the two officers were trying to "frame" him by placing the cigarette in the closet, and also defendant's testimony that although the officers knew he had nothing to do with that cigarette they threatened him with arrest unless he produced narcotics. In *People* v. *Keyes,* 103 Cal.App. 624, 644 [284 P. 1096], the court said, "It is always proper to show bias or intent of a witness as an independent fact." If bias can be shown as an independent fact, it logically follows that it may be rebutted, for that limited purpose only. *People* v. *Zemavasky,* 20 Cal.2d 56 [123 P.2d 478], is not in point. There, where the witness admitted open hostility towards the defendant, it was held improper to permit the witness on redirect examination to explain or justify her prejudice, because that had the effect only of emphasizing the hostility which had already been established. In any event, the defendant in cross-examination of Lamport, long before the above questions were asked, brought out the conversation in which defendant admitted he had not been supporting his wife and children. While defendant's counsel referred to the "spontaneous" statement by defendant at the time of the discovery of the cigarette, that the officers were trying to "frame" him—"Beyond that statement . . . there is no suggestion of a frameup in this case other than the straight denial that Mr. Perez knows nothing about the existence of this cigarette. Now, it need not necessarily be, and certainly it is quite obvious, that there are many ways that such a cigarette could get into his apartment other than by being brought in by the officers." Nevertheless the question of frameup and the attitude of the officers towards defendant were important issues in the case.

6. *County Jail Correspondence.*

 In his brief defendant states that his correspondence while in the county jail was erroneously admitted. He does

758

not state why. Defendant wrote two letters, portions of which were admitted in evidence as admissions. While the terms of the first letter were equivocal, the letter was admissible for the jury to determine whether its language referred to the circumstances of this case or to some other circumstances. The admission of the second letter referring to his desire for a county jail sentence rather than a San Quentin one, was not objected to. It would be admissible as an admission even if objected to.

7. *Instructions.*

 The most serious question concerns the refusal to give certain instructions. Defendant offered CALJIC No. 28 on circumstantial evidence. This was refused but CALJIC No. 21 (presumption of innocence, reasonable doubt, burden of proof), No. 22 (demonstration not required), No. 24 (direct and circumstantial evidence equally entitled to consideration), No. 25 (direct and indirect evidence—code definitions), and No. 26 (evidence susceptible of different constructions), were given. CALJIC No. 28 is to the effect that if the People's case rests entirely or chiefly on circumstantial evidence, each fact which is essential to complete a chain of circumstances that will establish defendant's guilt must be proved beyond a reasonable doubt. In *People* v. *Koenig*, 29 Cal.2d 87 [173 P.2d 1], a circumstantial evidence case, it was held erroneous (although not prejudicially so under the facts there), not to give an instruction containing the substance of CALJIC No. 28 offered here, even though the court there gave an instruction similar to CALJIC No. 26 given here. In *People* v. *Candiotto, ante,* p. 347 [275 P.2d 500], this court, in an opinion written by Mr. Justice Fred B. Wood, reviewed the cases considering instructions similar to CALJIC No. 28, and cited five cases in addition to the Koenig case holding it to be error not to give the instruction where circumstantial evidence is involved. Of these seven cases, the error was held to be prejudicial in four, and not prejudicial in three. In the Candiotto case the court, as here, gave CALJIC No. 24, No. 25, and No. 26, but we held that there is nothing comparable to CALJIC No. 28 in any of them, and therefore it was error not to give No. 28. Under the peculiar circumstances of the Candiotto case the failure to give the instruction was held not prejudicial. It was error in our case not to give it.

It should be pointed out, however, that in addition to the above mentioned given instructions, the court further in-

structed that if the evidence were susceptible of two or more reasonable constructions or interpretations, one pointing to guilt and the other to innocence, it was the jury's duty to adopt that interpretation admitting of innocence, and reject the one pointing to guilt. Also, if one of the possible conclusions should appear to be reasonable and the other unreasonable, it was the jury's duty to adopt the reasonable deduction and to reject the unreasonable, bearing in mind if the reasonable deduction points to guilt, "the entire proof must carry the convincing force required by law to support a verdict of guilty." The failure to give No. 28, under the circumstances of this case, was not prejudicial.

Defendant's proposed instruction No. 7 contained an element not in any of the instructions given by the court, namely, that to constitute possession it must be shown that not only did defendant know of the presence or existence of the contraband, but that he knew that the article was a narcotic. Again, in *People* v. *Candiotto, supra, ante,* p. 347, this court reviewed the California cases discussing the requirement in narcotic possession cases of knowledge that the particular article is a narcotic (not requiring, of course, knowledge that it is contraband) and pointed out that clearly knowledge of the narcotic character of the article is a necessary ingredient of the offense, requiring an instruction to that effect. We further pointed out that CALJIC No. 703, given in the Candiotto case, as well as here, does not contain any instruction on this subject, and that the failure to give an instruction requiring proof of knowledge of the narcotic nature of the article is error. We so hold here. However, as in the Candiotto case, there can be no question that defendant knew that the cigarette contained marijuana. While he denied possession, the jury found that he did possess it. Once that question is determined there can be no question but that he knew the article's character.

Defendant's proposed instruction No. 11 was to the effect that knowledge of the existence of an object is essential to "physical control with intent to exercise such control" as that phrase was used by the court in defining the word "possession." The court gave CALJIC No. 703: "Within the meaning of the law a person is in possession of a narcotic when it is under his dominion and control, and to his knowledge either is carried on his person or is in his presence and custody, or if not on his person or in his presence, the possession thereof is immediate, accessible and exclusive to him."

CALJIC No. 703 and the further instruction given, "To constitute unlawful possession of a narcotic it is not necessary that there be any specific intent on the part of the possessor. It is essential, however, that the defendant have possession knowingly, since there can be no criminal possession of an article without the knowledge of its existence and presence," covered the entire substance of proposed instruction No. 11, so there was no error in refusing to give it.

We do not find that the errors were prejudicial in view of defendant's admitted agreement to produce narcotics, his original plea of guilty, his admitted knowledge of marijuana, his willingness to accept a county jail sentence, the instructions given, and the other circumstances of the case. It would be unrealistic to conclude that the giving of those instructions would have resulted in a different verdict. We cannot find "after an examination of the entire cause, including the evidence . . . that the error complained of has resulted in a miscarriage of justice." (Const., art. VI, § 4½.)

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.