[Crim. No. 5815.   In Bank.   Feb. 7, 1956.]

THE PEOPLE, Respondent, v. JESS JOSEPH WINSTON, Appellant.

Charles O. Morgan, Jr., for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Respondent.

SPENCE, J.—Defendant was charged with the commission of four felonies. Counts one and two related to his alleged furnishing of marijuana to two minor girls on January 2, 1954; and count three related to his furnishing of marijuana to one of the girls on March 13, 1954; all in violation of section 11714 of the Health and Safety Code. Count four related to his alleged possession of marijuana on September 1, 1954, in violation of section 11500 of the Health and Safety Code. He appeals from the judgment of conviction on all four counts and from an order denying a new trial. ██ He also at-

tempts to appeal from an order denying probation, but since such an appeal is not authorized (Pen. Code, § 1237; *People* v. *Mason*, 109 Cal.App.2d 87, 89 [240 P.2d 64]), it will be dismissed.

As grounds for reversal, defendant argues these points: (1) Lack of proof of the corpus delicti on counts one, two, and three—that is, lack of substantial evidence that the cigarettes smoked by the two minor girls contained marijuana; (2) curtailment of the cross-examination of the girls to show their state of mind and possible bias; (3) denial of the severance of count four from the other three counts for trial; (4) refusal to instruct, with respect to count four, that defendant must know that the cigarettes found in his apartment contained marijuana; and (5) absence of a search warrant when the officers arrested defendant and found various items of evidence in his apartment. Only point (4) raises a serious question, but a review of the record convinces us that there was no prejudicial error and that the judgment of conviction should therefore be affirmed. (Const., art. VI, § 4½.)

The two girls testified that on January 2, 1954, they went to defendant's apartment; that they had known defendant about two years, had previously been to his apartment about 100 times and had smoked marijuana there at least 20 times. About half an hour after their arrival and following their affirmative response to defendant's question of whether they wanted to get "high," defendant went to the kitchen and returned with a cigarette. Both girls and defendant smoked the cigarette, passing it from one to the other; and both girls became "high." One of the girls testified that on March 13, 1954, she went alone to defendant's apartment, joining a small party there; that on this latter occasion defendant again brought a cigarette from the kitchen; that it was passed from person to person, and she, with the other smokers, became "high." Her story was corroborated by one of the group who did not smoke the cigarette but who described its "high" effect on the others—"to the point that they were feeling very, very giddy and silly." Both prosecuting witnesses described the cigarette smoked as having tucked in ends (customary with a marijuana cigarette) and the subsequent exhilarating effects they experienced, which were followed about three hours later by a depressed feeling. In August, 1954, both girls reported to the police their experiences with defendant.

On September 1, 1954, four police officers armed with a

warrant for defendant's arrest went to defendant's apartment and were admitted by him. They arrested defendant, searched the premises, and found three partially smoked marijuana cigarettes in the kitchen under a table scarf on top of a bread box. Defendant stated that he had never used marijuana, denied all knowledge of the cigarettes, and contended that they must have been left by a tenant to whom he had rented the apartment while he was out of town. He had been occupying the apartment for approximately three weeks between his return and his arrest. The officers further found a package of wheat straw paper, of the type in which, according to the narcotic expert, marijuana cigarettes are customarily wrapped. They also found a telephone directory sheet on which was written the names of both the prosecuting witnesses and their telephone numbers. At that time, defendant denied knowing either of the girls.

At the trial defendant admitted knowing both girls but denied that they had been in his apartment more than two times, neither of which was January 2, 1954. He denied selling or giving marijuana to either girl. He claimed that on January 2, when the girls testified that they smoked marijuana furnished by him in his apartment, he was not even there but was at various taverns. He further denied the visit and all the related circumstances as charged with respect to one of the girls on March 13, 1954. He said that he had the telephone numbers of the two girls in his directory list because each of the girls had telephoned asking him to give her number to the other in the event he saw or heard from the other. Both girls denied this.

Defendant first contends that the corpus delicti was not proved for the first three counts, in that there was no proof that the substance smoked was marijuana. While conceding that the prosecution need not physically produce the narcotic, he insists that to prove a substance is a narcotic, there must be not only the testimony of the user but also that of a medical doctor or expert. (*People* v. *Candalaria,* 121 Cal.App.2d 686 [264 P.2d 71]; *People* v. *Tipton,* 124 Cal.App.2d 213 [268 P.2d 196].) Although in the cited cases, in addition to the testimony of the users, experts testified that in their opinion, from the description given by the users and their reactions from its use, the substance was a narcotic, neither case holds that such expert evidence is required for a conviction if the users demonstrate a knowledge of the narcotic as such. But in any event, such expert evidence was present here.

■ Both girls testified that they had frequently smoked marijuana; they described the appearance of a marijuana cigarette, having tucked in ends; they related the custom of smoking such a cigarette in chain fashion in a group, each person taking one or two puffs and inhaling, then passing it to another; and they told of their "high" feeling after about 15 minutes, their feeling of freedom from their cares, lasting about three to four hours, then their feeling of "coming down," that is, their feeling of depression, at which time they became hungry. An inspector from the State Narcotic Bureau, after qualifying as an expert on marijuana following his many years' service as a chemist with the bureau, corroborated each of these essential points in the girls' testimony, and further testified that if a person had the feelings above described, it would be a good indication that the person had been using marijuana. It is true that he was not asked his opinion as to whether the substance smoked by the girls was marijuana, and that, on cross-examination, he admitted that without seeing the person it would be as easy to conclude from the described symptoms that such person had been drinking as to conclude that he had been smoking marijuana. But these were matters affecting the jury's evaluation of his entire testimony, including his description of the manner of usage, sensations, and symptoms produced by such smoking, which closely corresponded with the two girls' testimony on these matters.

■ The competency of the girls to testify that the cigarettes were marijuana was shown by their knowledge of it from previous use. In view of such experience, the trial court permitted the girls to identify the substance furnished them by defendant as marijuana. "The weight, of course, to be given this testimony was for the jury." (*People* v. *Candalaria, supra,* 121 Cal.App.2d 686, 690.) ■ Defendant cites the fact that he introduced into court a cigarette containing Bull Durham but rolled in wheat straw paper so as to resemble the marijuana cigarettes described by the girls; that each girl stated that except that the cigarette "wasn't so flat" and the ends were "not tucked in," it looked like the one each had smoked on January 2; and that neither could tell by looking at the cigarette whether it contained marijuana. But these admissions by the girls did not disqualify them from testifying that the substance they smoked was marijuana, the taste and effect of which was known to them. At most, their failure to tell whether a cigarette contained marijuana

or not by merely looking at the outside wrapping went to the weight of their testimony, and not to its admissibility. ▮ In view of the foregoing evidence, we conclude that the fact that the cigarettes smoked by the girls were marijuana cigarettes was amply proved. (*People* v. *Candalaria, supra,* 121 Cal.App.2d 686, 689; *People* v. *Rios,* 127 Cal.App. 2d 620, 622 [274 P.2d 163].)

▮ Defendant next contends that his cross-examination of the two girls to show their state of mind and possible bias was unduly curtailed. Both girls were asked when they reported to the police the incidents of their smoking marijuana in defendant's apartment; each said that it was in the course of questioning by a police officer attached to the Juvenile Bureau; and each thereafter was arrested. The court sustained objections to questions as to the reason for their arrest and the conversations there had. Each girl, however, stated that the police officer had asked her questions pertaining to her testimony to be given at the trial. Defendant maintains that he was entitled to elicit the conversations in order for the jury to determine whether the police officer had indicated to the girls that each might receive leniency in her own case if she were to testify against defendant. While the conversations as a whole were not admissible, the court should have permitted the questions concerning the conversation between the police officer and each girl as to her testimony at the trial and also the questions whether each believed from her talk with the police officer that she would obtain such leniency. ▮ Although the extent of cross-examination on any "fact which tends to impeach the credibility of a witness . . . rests very largely in the discretion of the trial court" (27 Cal.Jur., § 96, pp. 122-123), nevertheless considerable latitude should be allowed to show the witness' state of mind and possible bias. (*People* v. *Pantages,* 212 Cal. 237, 255 [297 P. 890]; *People* v. *Evans,* 113 Cal.App.2d 124, 127 [247 P.2d 915].) ▮ Assuming, however, that further cross-examination might well have been permitted, it does not appear that defendant was prejudiced by the trial court's rulings. Both girls had admitted using marijuana prior to defendant's furnishing it to them. Both were subject to control by the juvenile authorities, had juvenile records, and had been extensively interviewed by the police. Time and again the jury learned that both girls were in custody and that their testimony was subject to the distinct possibility that it was given in the hope of obtaining leniency. Practically

everything that defendant was trying to develop through cross-examination along this line eventually got before the jury except an express agreement for leniency, but both girls specifically denied that any such promise had been made to them.

Nor may defendant prevail in his objection to the trial court's denial of his motion to try count four (possession) separately from the three counts charging him with furnishing marijuana to minors. Section 954 of the Penal Code provides that crimes of this nature may be included in one accusatory pleading, subject to the right of the trial court, "in the interest of justice and for good cause shown," to order "at its discretion" that any offense or offenses be tried separately. In the absence of a showing of an abuse of such discretion in refusing a severance, the trial court's ruling will not be disturbed on appeal. (*People* v. *Leete*, 130 Cal.App.2d 725, 727 [279 P.2d 769]; see also *In re Pearson*, 30 Cal.2d 871, 873-874 [186 P.2d 401].)

Defendant's fourth ground for reversal, in relation to the possession charge (count four), raises the most serious question. He offered an instruction informing the jury that knowledge of the narcotic character of the thing possessed is an essential ingredient of the offense charged. The court refused to give it but did give CALJIC No. 703: "Within the meaning of the law a person is in possession of a narcotic when it is under his dominion and control and, to his knowledge, either is carried on his person or is in his presence and custody, or, if not on his person or in his presence, the possession thereof is immediate, accessible and exclusive to him." This latter instruction was not sufficient for it did not include the essential element of knowledge of the narcotic character of the particular object possessed. While specific intent to violate the law is immaterial to a conviction for the unlawful possession of a narcotic, knowledge of the object's narcotic character—that is, "knowledge that the facts exist which bring the act . . . within the provisions of [the] code"—is required. (*People* v. *Gory* (1946), 28 Cal.2d 450, 456 [170 P.2d 433]; see also *People* v. *Cole* (1952), 113 Cal.App.2d 253, 258 [248 P.2d 141]; *People* v. *Barnett* (1953), 118 Cal.App.2d 336, 339 [257 P.2d 1041]; *People* v. *Rice* (1954), 123 Cal.App.2d 124, 125 [266 P.2d 200]; *People* v. *Tennyson* (1954), 127 Cal.App.2d 243, 245-246 [273 P.2d 593]; *People* v. *Candiotto* (1954), 128 Cal. App.2d 347, 351-353 [275 P.2d 500]; *People* v. *Perez* (1954),

128 Cal.App.2d 750, 759 [276 P.2d 72] ; *People* v. *MacCagnan* (1954), 129 Cal.App.2d 100, 107-110 [276 P.2d 679].)

Respondent contends that there is no requirement of knowledge on the defendant's part of the narcotic character of the object possessed, and argues that the case of *People* v. *Gory, supra,* should not be construed as requiring such knowledge. While the Gory case, on its particular facts, did not require such precise holding to justify reversal of the judgment, such concept of knowledge is implicit in the discussion of the basic principles involved. There defendant, a prisoner at the Los Angeles County Honor Farm, shared living quarters with a group of prisoners in a bunkhouse. Each prisoner was issued a small metal box for storage of his personal effects. There was no way of locking the boxes, and during the day a guard was left in charge of the bunkhouse. Marijuana was found in defendant's box. At the trial defendant, charged with unlawfully having marijuana in his possession, testified that he "had never seen [the material] before the officers removed it from the box." (P. 452.) While there an instruction requiring the finding of a "guilty knowledge" and a "guilty intent" on the part of defendant to sustain his conviction was held to have been properly withdrawn from the jury's consideration, it was deemed erroneous to have rejected an instruction predicating a finding of guilt upon defendant's "knowingly" having "in his possession the objects charged in the information." Accordingly, it was said at page 456: "The word 'knowingly' imports only a knowledge that the facts exist which bring the act or omission within the provisions of this code. It does not require any knowledge of the unlawfulness of such act or omission." (Pen. Code, § 7, subd. 5; *People* v. *McClennegen,* 195 Cal. 445, 469 [234 P. 91].) Thus [the erroneously rejected] instruction invoked the element of knowledge in the sense of defendant's *awareness of the presence* of the marijuana in the box given him for the storage of his personal effects at the prison farm and so presented to the jury an issue of fact determinative of defendant's guilt or innocence of the possession prohibited by statute."

Respondent argues that mere conscious possession of an object, not knowing its true character as a narcotic but honestly believing it to be an innocuous article, nevertheless comes within the purview of the narcotic possession law. To this point this language from the Gory case is cited, pages 455-456: "The distinction which must be drawn . . .

is the distinction between (1) *knowledge of the character of the object and the unlawfulness of possession thereof* as embraced within the concept of a specific intent to violate the law, and (2) *knowledge of the presence of the object* as embraced within the concept of 'physical control with the intent to exercise such control,' which constitutes the 'possession' denounced by the statute. It is 'knowledge' in the first sense which is mentioned in the authorities as being immaterial but 'knowledge' in the second sense is the essence of the offense.'' This distinction was meant to point out the difference between defendant's possession of marijuana with knowledge that it was in disregard of the law and therefore indicating his specific intent to violate the law, and defendant's possession of marijuana knowing its nature but innocent that its possession constituted a violation of the law. Thus, it was further said in the Gory case at page 457: ''Here the principal fact relied upon by the prosecution is the finding of marijuana in defendant's unlocked box and because of the denial by defendant of knowledge of its presence there, it was the duty of the trial court, on proper instructions, to submit to the jury the question as to whether defendant had knowledge of the presence of marijuana.''

In short, in the Gory case the question presented by defendant's testimony was whether he had knowledge of the presence of the material later identified as marijuana; in other words, he claimed that he had no knowledge of the presence of any such material in his box. So without going into the precise question of defendant's knowledge of the nature of the material, the Gory case involved a situation where defendant claimed that he had no knowledge of the presence of the material in his box, regardless of what its nature may have been. In discussing the factors to be considered, the following cases were cited in the Gory case (28 Cal.2d 454) for the proposition that a specific intent to violate the law is not necessary to justify a conviction for the unlawful possession of narcotics: *People* v. *Le Baron*, 92 Cal.App. 550, 568 [268 P. 651, 269 P. 476]; *People* v. *Randolph*, 133 Cal.App. 192, 196 [23 P.2d 777]; *People* v. *Johnson*, 66 Cal.App.2d 164, 165 [152 P.2d 331]; *People* v. *Sweeney*, 66 Cal.App.2d 855, 859 [153 P.2d 371]. But insofar as those cases or the language employed may indicate that ''mere possession of the narcotics'' without knowledge of their narcotic nature would sustain a conviction, they are hereby disapproved. (See also *People* v. *Charley Quong*,

5 Cal.App.2d 137, 139 [42 P.2d 386]; *People* v. *Terrazas,* 42 Cal.App.2d 281, 282 [108 P.2d 680]; *People* v. *Barton,* 48 Cal.App.2d 565, 567 [119 P.2d 952].)

██ Since under the Gory case, knowledge of the narcotic character of the article possessed is an essential ingredient of the offense charged (*People* v. *Millum,* 42 Cal.2d 524, 529 [267 P.2d 1039]; *People* v. *Gorg,* 45 Cal.2d 776, 780 [291 P.2d 469]; also *People* v. *Cole, supra,* 113 Cal.App.2d 253, 258; *People* v. *Candiotto, supra,* 128 Cal.App.2d 347, 350-353; *People* v. *Perez, supra,* 128 Cal.App.2d 750, 759; *People* v. *MacCagnan, supra,* 129 Cal.App.2d 100, 110-111), it was error to fail to so instruct. ██ But there remains the question of whether the error was prejudicial under the circumstances of this case. Defendant was found guilty of having furnished marijuana to two minor girls on two different occasions, which antedated his arrest for unlawful possession of marijuana on September 1, 1954. As the jury found that he was in possession of the marijuana cigarettes which he gave to the girls to smoke on the two prior occasions, it is inconceivable that the jury, even if properly instructed on the possession charge, would have failed to find that defendant had knowledge that he was in possession of the marijuana cigarettes on the relevant later date, September 1, 1954. Accordingly, it cannot be said that the error in question resulted in a miscarriage of justice so as to justify a reversal. (Const., art. VI, § 4½; *People* v. *Candiotto, supra* 128 Cal.App.2d 347, 354-355; *People* v. *Perez, supra,* 128 Cal.App.2d 750, 759-760.)

Before concluding the discussion relating to the required knowledge on the part of the defendant to sustain a conviction upon a charge of unlawful possession of a narcotic, it should be made clear that we have been discussing solely a question of substantive law together with the question of the refusal of the trial court to give requested instructions upon that subject. In other words, we have not been discussing the question of the nature of the evidence required to sustain a conviction of unlawful possession of a narcotic; and it should not be implied that the required knowledge on the part of the defendant may not be inferred from surrounding circumstances.

Defendant finally contends that his constitutional rights were violated in that evidence admitted and used against him was obtained as the result of an unlawful search and seizure. (U.S. Const., 4th Amend., Cal. Const., art.

I, § 19; *People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905].)
The record does not sustain his claim. As above stated, the
police officers had a warrant for defendant's arrest when
they went to defendant's apartment and were admitted by
him. After placing defendant under arrest, they searched the
apartment and found the marijuana cigarettes. ■■■ While
the Cahan case held that "evidence obtained by police officers
in violation of federal and state constitutional prohibitions
against *unreasonable* search and seizure is inadmissible," it
did "not purport to inhibit the right of law enforcement
officers to conduct a *reasonable* search and seizure incident
to a valid arrest." (*People* v. *Coleman*, 134 Cal.App.2d
594, 599 [286 P.2d 582].) It is further said in the
Coleman case, pages 599-600: "It is well settled that a
search without a warrant is valid where it is incident to a
lawful arrest, if it is reasonable and made in good faith; and
that a seizure, during such a search, of evidence related to
the crime is permissible. (*In re Dixon*, 41 Cal.2d 756, 761-
762 [264 P.2d 513]; *Harris* v. *United States*, 331 U.S. 145,
151 [67 S.Ct. 1098, 91 L.Ed. 1399]; *United States* v. *Rabin-
owitz*, 339 U.S. 56, 61 [70 S.Ct. 430, 94 L.Ed. 653]; *McIntire*
v. *United States*, 217 F.2d 663, 665; *Agnello* v. *United States*,
269 U.S. 20, 30 [46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409].)
In the case last cited, the court succinctly stated: 'The right
without a search warrant contemporaneously to search per-
sons lawfully arrested while committing crime, and to search
the place where the arrest is made in order to find and seize
things connected with the crime . . . is not to be doubted.'
There is nothing in the language, logic or rationale of the
Cahan case, where the search and seizure was accomplished
in violation of constitutional guaranties, which is in conflict
with the above principle, which has prevailed not only in
California and the federal courts, but in our sister states.
(Annos.: 32 A.L.R. 680, 51 A.L.R. 424, 74 A.L.R. 1387
and 82 A.L.R. 782)"

In the Coleman case, as well as in the Dixon case cited in
the above quotation, the police officers did not have a warrant
of arrest but the court in both instances held that under the
circumstances the arrest was valid and the accompanying
search of the premises incident thereto was proper. In
the present case the police had a valid warrant of arrest.
Defendant unavailingly argues that here the police officers
had ample time to procure a search warrant and therefore
such warrant was required in order to validate the search and

seizure of the incriminating evidence at the time of his arrest. (*Trupiano* v. *United States,* 334 U.S. 699, 708 [68 S.Ct. 1229, 92 L.Ed. 1663].) In *United States* v. *Rabinowitz,* 339 U.S. 56 [70 S.Ct. 430, 94 L.Ed. 653], it was held that a search of the defendant's premises incident to his lawful arrest at those premises was not unreasonable. In so concluding, the court in the Rabinowitz case further said at page 66: "To the extent that *Trupiano* v. *United States,* 334 U.S. 699 [68 S.Ct. 1229, 92 L.Ed. 1663], requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled. The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable."

The judgment and the order denying a new trial are affirmed. The appeal from the order denying probation is dismissed.

Gibson, C. J., Shenk, J., Traynor, J., and McComb, J., concurred.

SCHAUER, J.—The holding herein, as I understand it, specifically construes the majority decision in *People* v. *Gory* (1946), 28 Cal.2d 450 [170 P.2d 433], as not standing for, but on the contrary as negating the implication (discussed in the concurring opinion, p. 459 of 28 Cal.2d) "that mere conscious possession of an object, not knowing its true character (as, for example, possession of marijuana believed in good faith to be ordinary tobacco), any more than conscious possession of an object lawful in itself but within which, unknown to the possessor, contraband is concealed, constitutes a criminal act." With such understanding, I concur in the opinion and judgment.

Carter, J., concurred.